(7 Misc. Rep. 519.)

## WATERS v. WATERS.

(Superior Court of Buffalo, Special Term. January, 1894.)

1. SUMMONS—PROOF OF PUBLICATION—VARIANCE.
    An affidavit of publication in the "Buffalo Daily Transcript" sufficiently shows compliance with an order of publication, directing the summons to be published in the "Daily Transcript," where it appears that there was no other paper published in the city at that time bearing a similar name.

2. SAME—AFFIDAVIT BY "MANAGER."
    An affidavit of publication, made by a person who describes himself as "manager," is sufficient compliance with Code Civ. Proc. § 444, which requires proof of the publication to be made by the affidavit of the "printer or publisher, or his foreman or principal clerk."

3. SAME—TIME OF PUBLICATION.
    Code Civ. Proc. § 440, requires publication of summons to be made "not less than once a week for six successive weeks." Section 441, provides that, "for the purpose of reckoning, the time within which the defendant must appear or answer to the service by publication is complete upon the day of the last publication pursuant to the order." *Held*, that section 441 did not change the rule prescribed by section 137 of the old Code, that service of the summons shall be deemed complete "at the expiration of the term prescribed by the order of publication," and therefore defendant's time to answer does not begin to run until the expiration of six full weeks after the first publication.

4. SAME—WEEKLY PUBLICATIONS.
    Failure to publish summons once a week for six successive weeks (Code Civ. Proc. § 440) is not a mere irregularity, but is a jurisdictional defect.

Action by Olive E. Waters against Albert S. Waters. Plaintiff moves for an order to show cause why defendant's property should not be sequestered, and a receiver appointed, in order to satisfy a decree of divorce granted to plaintiff against defendant, allowing alimony to her. Denied.

Daniel J. Kenefick, for plaintiff.
W. W. Woodworth, for defendant.

TITUS, C. J. This matter is brought before the court on an order to show cause by the plaintiff why the property of the defendant should not be sequestered, and a receiver of the rents and profits appointed, and by him paid over to the plaintiff, and applied in satisfaction of a decree of divorce granted the plaintiff against the defendant, allowing alimony to her. It appears that the par-

ties, who were husband and wife, were divorced for the adultery of the defendant, and in the decree the defendant was ordered to pay $46.46 costs, and $8 a week, from the date of the decree, for the support and maintenance of the plaintiff and her children of the marriage. The judgment was signed, and entered in the office of the clerk of this court, on the 30th day of October, 1883. No portion of the sum directed to be paid has ever been paid by the defendant, and at the time this motion was made it amounted, with interest, to $5,498.06. The defendant is a resident of Chicago, and recently, by the death of his father in this city, inherited enough property to pay the amount now due under the decree. The defendant opposes the granting of the order on various grounds,—among others, that no valid service of the summons was ever made upon the defendant, and that at the time of the application for judgment the defendant was not in default, even if there had been a good service of the summons upon him. The consequences of a decision either way are so serious that I have taken considerable pains to ascertain the law of the case, and have made inquiry outside of the record for some additional facts which would throw light upon the subject; but the lapse of time, and the loss or destruction of the papers in which the summons was published, have rendered futile all efforts in that direction. The question is most important for the reason that, shortly after the divorce was granted to the plaintiff, she again married, and is now living with her husband, and has one or more children by him, in the assurance that she was legally and duly divorced from the defendant. Then, the sum which the defendant is called upon to pay would practically require all of the property which he has inherited from his father, and, as she has been supported and maintained by her present husband, it seems a hardship to require the defendant now to make full payment. The decree reserves to the defendant the right to move the court at any time to alter the allowance for alimony; but no application for that purpose has ever been made, and the court is not now asked to modify the decree in that respect. Kamp v. Kamp, 59 N. Y. 223. It appears that the action was commenced on the 21st day of May, 1883, by delivering the summons to the sheriff, with instructions to serve it upon the defendant. The sheriff did not succeed in getting a service, and Mr. Cutting, the plaintiff's attorney in the action, then tried to find the defendant, and discovered that he had left the city of Buffalo, but the place of his whereabouts he was unable to learn. Thereupon he made application to the county judge of Erie county, who, on the 13th day of July, granted an order of publication of the summons in the Buffalo Evening News and the Daily Transcript, and provided in the order that the mailing of the summons and complaint and order to the defendant be dispensed with. It is claimed by the defendant that the affidavit presented to the county judge, of the inability to make a personal service upon the defendant, was not sufficient to authorize the order of publication. I am inclined to hold it sufficient. Although it is mostly on information, yet the affiant swears to his own efforts to find the defendant, and after the lapse

of 10 years I do not think the judgment should be disturbed on that ground. Steinle v. Bell, 12 Abb. Pr. (N. S.) 171. It appears by the affidavits of the "foreman" of the Buffalo Evening News that the notice was published for six weeks, the first insertion being on the 14th day of July, and the last on the 18th day of August, which would give time for six insertions on each seventh day for six weeks. The affidavit of the publication in the Buffalo Daily Transcript was made by the "manager" of that publication, and it is to the effect that it was published once a week for six weeks, commencing on the 14th day of July, and ending on the 17th day of August, and that not more than six days intervened between any one publication thereof. No question is raised that the proof of publication in the Buffalo Evening News is sufficient. But the sufficiency of the affidavit of publication in the Daily Transcript is questioned. It is claimed that the order directed the summons to be published in the "Daily Transcript," while it appears to have been published in the "Buffalo Daily Transcript." I do not think this is such a variation from the terms of the order as to invalidate the publication, if it was legal and sufficient in other respects. There was no other paper published in this city at that time bearing a similar name, and the Buffalo Daily Transcript was undoubtedly the paper intended to be mentioned in the order. Another objection is urged,—that the affidavit is made by a person who describes himself as "manager," and not "printer or publisher, or his foreman or principal clerk." [1] I do not think this objection is well taken. The object of the statute is that the affidavit shall be made by some person who knows that the notice was printed, and can give positive proof, and if that person is the "manager," when there is nothing to cast suspicion upon the affidavit, the object of the statute is attained, and for that purpose the term "manager" is synonymous with "publisher" or "foreman." I have cited no authorities in support of these holdings, for the reason that it does not seem necessary to do so, and, as I have not been referred to any, it is probable, from the nature of the case, that none can be found.

The application for judgment was made at special term on the 12th day of September, and the first day of publication in the Daily Transcript was on the 14th day of July. Allowing 42 days to elapse before the defendant's time to answer would begin to run, it would not expire until the 27th day of August, and the defendant would then have 20 days in which to appear and answer. This would allow him until the 16th day of September following. The default was entered on the 12th day of September, so that 62 days did not elapse before the order of reference was made. If the notice had been properly published, so that service on the defendant was complete, and application for judgment was made, before the expiration of the defendant's time to answer, it would not affect the jurisdiction of the court over the person of the defendant, but would at most be an irregularity (Hallett v. Righters, 13 How. Pr. 43), and would not necessarily render the judgment void; and the court

[1] Code Civ. Proc. § 444.

will not, after the lapse of so many years, set aside a judgment for an irregularity in the proceedings after the service of the summons (Soulden v. Cook, 4 Wend. 217). The defendant in this case has known of this judgment for nearly 10 years, and at this late day the consequences of such an exercise of power would be too serious to warrant the court in interfering to set it aside on that ground. Bank v. Spencer, 19 Hun, 569; Decker v. Kitchen, 26 Hun, 173; Skinner v. Dayton, 5 Johns. Ch. 190.

I have assumed, in what has been said, that the service was properly made, so as to confer jurisdiction upon the court to authorize the proceedings and render a valid judgment; and the provisions of section 445 of the Code with reference to allowing the defendant to come in and answer, after default, as well as fixing the limit after which no judgment will be set aside, must be understood and considered, on the assumption that legal service of the summons has been made, as provided by the statute, "that the summons has been served pursuant to an order made as prescribed in this article," and the court obtained jurisdiction of the person of the defendant by complete service. Hallett v. Righters, supra. It is claimed by the defendant that the proof of publication in the Daily Transcript is not sufficient, in that, if the first publication was on the 14th day of July, and the last on the 17th day of August, including both dates, it would be only 35 days, and, as no publication was made on the thirty-sixth day, there was no publication made in the sixth week at all, and hence there was not a publication "not less than once a week for six successive weeks," as required by section 440 of the Code. If no legal service of the summons was made as required by the Code, then the court obtained no jurisdiction, and all proceedings thereafter had are void, and no valid decree could be entered. This presents the most serious question to be determined. Section 441 of the Code provides: "For the purpose of reckoning the time, within which the defendant must appear or answer, service by publication is complete, upon the day of the last publication pursuant to the order. * * *" Section 137 of the old Code provides: "In the cases mentioned in section 135, the service of the summons shall be deemed complete at the expiration of the term prescribed by the order for publication." It would seem, from the language of this section, that the service would not be complete until the end of full six weeks, while under section 441 of the new Code the time would appear to be complete "upon the day of the last publication pursuant to order." In other words, under the old Code the time to answer would commence to run at the expiration of 42 days, and under the present Code it would appear that the time to answer would commence to run at the expiration of 36 days, if that was the last day of publication. This construction was given section 137 of the old Code by the supreme court in Richardson v. Bates, 23 How. Pr. 516, where it was held that the service was not complete until the end of 42 days, and that the defendant's time to answer did not begin to run until the service was complete, after which he had 20 days in which to answer. But this question is no

longer an open one. The court of appeals, in Market Nat. Bank v. Pacific Nat. Bank, 89 N. Y. 397, after reviewing the authorities under the old Code, came to the conclusion that section 441 had not changed the rule existing at the time of the adoption of the present Code, and that the defendant's time does not begin to run until the expiration of 6 full weeks, or 42 days, after the first publication. The question was directly before the court, and the opinion of Judge Miller was concurred in by all of the judges taking part in the decision of the case. In this case the first publication was on the 14th day of July, and the last on the 17th day of August, which would allow but 35 days, counting the first and last days of publication; so that there could not have been a publication in 6 different weeks, because, counting the first and last days of publication, there would be but 5 weeks, of 7 days each, and, to have a publication on the sixth week, the last publication must have been on the thirty-sixth day. If a party, under this provision of the Code, is not required to publish the summons in the sixth week, there is no reason why he should not publish it in the fifth or fourth weeks, only so that there are six insertions. This was not the intention of the legislature, as the court of appeals has held. The omission to publish once a week for six successive weeks is not a mere irregularity. The court gets no jurisdiction over the person of the defendant unless the statute in this respect is conformed to. The proceedings to procure service by publication are jurisdictional facts. The court can amend any proceeding after the service is complete and jurisdiction obtained, but cannot amend any of the proceedings necessary to confer jurisdiction upon the court. The provision of the statute must be strictly pursued and fully complied with, to confer jurisdiction. Hallett v. Righters, supra. The judgment obtained on defective publication is absolutely void. The judgment roll in this case does not show, on its face, facts which confer jurisdiction upon the court. It is the absolute right of a party to arrest and stay proceedings upon and vacate a void judgment upon which active proceedings are in progress to enforce the same, and to deprive him of his property and compel obedience to its mandates. Kamp v. Kamp, 59 N. Y. 223; Kinnier v. Kinnier, 45 N. Y. 535. It is not necessary in this case to vacate the judgment. No application is made for that purpose. The defendant simply contests the plaintiff's claim to have the judgment enforced against him for the collection of alimony, and I have no doubt of his right to invoke the aid of the court to protect him against its enforcement. If the position taken is correct, the motion of the plaintiff should be denied, but I think it should be denied without costs.