[Civ. No. 1683. Second Appellate District, Division One.—July 28, 1920.]

CITY OF LOS ANGELES (a Municipal Corporation), Respondent, v. A. S. KOYER et al., Appellants.

[1] EMINENT DOMAIN — CONDEMNATION OF LAND FOR WAREHOUSE PURPOSES.—Prior to the amendment in 1913 of section 1238 of the Code of Civil Procedure, by inserting in subdivision 4 thereof the word "warehouses" after the words "wharves, docks, piers," the general law of the state did not authorize the condemnation of land for warehouse purposes.

[2] ID.—GRANT BY IMPLICATION—LIMIT OF POWER—INHERENT POWER OF MUNICIPALITY.—A grant of the power of eminent domain, which is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice, will never pass by im-

plication, and when the power is granted, the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained. A municipal corporation has no inherent power of eminent domain and can exercise it only when expressly authorized by the legislature.

[3] ID.—MUNICIPAL CORPORATIONS—LOS ANGELES — CONSTRUCTION OF CHARTER.—Section 262 of the charter of the city of Los Angeles, authorizing the city to incur indebtedness and issue bonds for the purpose of constructing docks, wharves, and warehouses, and "acquiring the necessary land therefor by purchase or condemnation," was ineffective to authorize that city to condemn land for warehouse purposes, when that power was not granted by the general laws of the state.

[4] ID.—MUNICIPAL AFFAIR.—The exercise of the power of eminent domain is not to be classed as a municipal affair.

[5] ID.—WHEN ACTION COMMENCED—RIGHT TO MAINTAIN.—An action in eminent domain is commenced at the time when the summons is issued; and the right to maintain such action must be determined as of that time.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walter Bordwell, Judge. Reversed.

The facts are stated in the opinion of the court.

Lewis W. Andrews, Thomas O. Toland, A. V. Andrews and Andrews, Toland & Andrews for Appellant Outer Harbor Dock & Wharf Company.

Robert Young for Appellant A. S. Koyer.

Charles S. Burnell, City Attorney, Albert Lee Stephens, City Attorney, Clyde M. Leach, Assistant City Attorney, and Charles D. Houghton, Deputy City Attorney, for Respondent.

CONREY, P. J.—Action to condemn lands for warehouse purposes. Judgment was entered in favor of the plaintiff. The defendants Outer Harbor Dock & Wharf Company and A. S. Koyer appeal therefrom and from an order denying their motion for a new trial.

Appellants rely upon numerous alleged errors of the court in rulings upon evidence offered and in the manner of conduct of the trial by the judge before whom the case was tried, and in other particulars, by reason whereof they

48 Cal. App.—46

contend that the judgment should be reversed. All of these matters may be dismissed from further attention, if it be held that, as claimed by appellants, the city at the time of the commencement of this action did not have the right to maintain any action for the condemnation of land for warehouse purposes.

The action was commenced by the filing of a complaint and the issuance of summons on the sixth day of September, 1910. Pursuant to the verdict of a jury, judgment was entered on the fifth day of September, 1912, which was followed by the final judgment of condemnation entered on the twenty-sixth day of November, 1912. A motion for new trial was duly presented and was denied by the court on the twenty-eighth day of September, 1914. The action was tried upon an amended complaint which was filed on the eighth day of August, 1911. An amendment to the amended complaint was allowed and filed on the twenty-eighth day of August, 1912. The amended complaint alleged "that the public interest and necessity require that certain municipal improvements be made by the plaintiff, the city of Los Angeles, to wit, that public warehouses for facilitating and accommodating commerce and navigation in waters within the limits of said city, the same to be owned and operated by the said city, be constructed; and for that purpose it is necessary that the plaintiff take and condemn for public use for the purpose of constructing and operating public warehouses thereon" the lands described. The amendment consisted of an additional paragraph which alleged "that the public interest and necessity require, and ever since prior to the third day of September, 1910, have required, that certain municipal improvements be made by the plaintiff, the city of Los Angeles, to wit: That public wharves for facilitating commerce and navigation in waters within the limits of said city be constructed, such wharves to be owned and operated by said city; that the plaintiff, the city of Los Angeles, proposes, and ever since prior to said last-mentioned date has proposed, to construct such public wharves for said purpose on lands upon said waters and adjacent to and in the vicinity of the lands described in paragraph III of this complaint. That the aforesaid public warehouses to be constructed upon said lands are and will be necessary for the purpose of operating said

public wharves, and said city intends to use said ware-
houses in connection with the operation of such wharves.''

The evidence shows without conflict that the proposed
warehouse location on the lands of appellants is on a bluff
some fifty feet, more or less, higher than the nearest
wharves of the city, and at a distance equal to several
ordinary city blocks from those wharves. From this the
necessary conclusion follows that the warehouse is not to be
located upon any wharf or adjacent to any wharf of the
city. Separate means of transportation from the wharves
to the warehouse will be as completely necessary as if the
warehouse was to be located many miles distant from the
wharves. In other words, the warehouses are to be physi-
cally separate and distinct from the wharves and have no
connection therewith, except that commodities delivered
upon those wharves or destined thereto may be placed in
the warehouse after delivery upon the wharves or prior to
being sent thereto for transportation. The evidence fur-
ther shows by undenied testimony of the city's witnesses
that the proposed warehouses are to be general warehouses,
irrespective of any special interest, and not conserving the
interests of the city wharves alone.

[1] At the time of the commencement of this action it
was provided in section 1238 of the Code of Civil Pro-
cedure that ''subject to the provisions of this title, the
right of eminent domain may be exercised in behalf of the
following public uses: . . . 4. Wharves, docks, piers, chutes,
booms, ferries, bridges. . . .'' At that time this was the
only provision of the general law, as expressed in our codes
or other statutes, showing or designating any uses by
reason of which respondent makes claim that the right of
condemnation might be exercised. The only other basis of
authority relied upon by respondent is found in the pro-
visions of the charter of the city of Los Angeles. The
charter at that time contained the following provisions:

''Sec. 2. The said corporation shall have the power: . . .

''(7-c) To acquire or construct and operate public
wharves, docks, piers or moles upon the seashore, in con-
nection with the transportation of passengers and freight
between the ocean and the city, and to fix and collect
charges therefor.'' (Stats. 1909, p. 1291.)

"Sec. 258. . . . The city of Los Angeles shall also have, throughout the whole of said city, . . . the exclusive power to acquire, construct, own, operate and maintain docks, wharves, piers, canals and seawalls. . . ." (Stats. 1909, p. 1303.)

"Sec. 262. For the purpose of opening, improving, constructing or maintaining streets, highways, or other means of public transportation, to navigable waters within the county of Los Angeles, and acquiring the necessary land therefor by purchase or condemnation, and for the further purpose of constructing and maintaining canals and waterways between such navigable waters and any such streets, highways, or means of transportation, and acquiring the necessary land therefor, by purchase or condemnation, and for the further purpose of constructing docks, wharves, and warehouses, within or without the city boundary, to be owned and operated by the city and acquiring the necessary land therefor by purchase or condemnation, the city of Los Angeles shall be authorized to incur an indebtedness, in addition to any amount now authorized by law, and to issue bonds therefor, to be designated as 'Harbor Improvement Bonds.' " (Stats. 1909, p. 1305.)

Referring to *Clark* v. *City of Los Angeles*, 160 Cal. 317, [116 Pac. 966], which case involved the validity of harbor improvement bonds intended to supply funds for the same harbor improvements in connection with which the city claims the right to condemn the property of appellants, counsel for respondent contend that the supreme court specifically held that under the charter provisions quoted above the city had the power to construct and maintain warehouses. In the proceedings leading to the election held to authorize the issuance of the bonds, the resolution of the council had declared as one of the purposes of the proposed improvement that it was intended to construct "docks, wharves and warehouses" upon or adjacent to the city waterfront bordering upon navigable waters comprising a described portion of the harbor of San Pedro. The supreme court affirmed a judgment whereby the superior court refused to enjoin the sale of the bonds. Referring to warehouses, the court said that "warehouses are a necessary, or at least a convenient, adjunct to a wharf." And again, "warehouses, as stated, are convenient parts of a wharf,

being necessary for the safekeeping of goods thereon while awaiting shipment.'' This was in line with the other decisions to which we are referred by respondent, which are to the effect that the maintenance of sheds, warehouses, and elevators on a public wharf does not create any new or additional servitude or burden upon property dedicated for wharf purposes, but they are simply a means of using the wharf and incidental to the use of the wharf for the very purposes for which it was dedicated or condemned. (*Belcher Sugar Refining Co.* v. *St. Louis Grain Elevator Co.,* 101 Mo. 192, [8 L. R. A. 801, 13 S. W. 822]; *Reighard* v. *Flinn,* 194 Pa. St. 352, [44 Atl. 1080]; *Illinois & St. L. R. & C. Co.* v. *St. Louis & P. El. Co.,* 2 Dill. 70, [Fed. Cas. No. 7007].)

To hold that a warehouse constructed upon a wharf must be regarded as a part of the wharf, or as an incident of its use, is by no means equivalent to a ruling that the power to condemn property for use as a warehouse at a location distinctly different and separate from that of the wharf is included in the power to condemn property for use as a wharf. We have been referred to no decision or other legal authority which carries this doctrine of implied power to the extent contended for by respondent. [2] ''A grant of the power of eminent domain, which is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice, will never pass by implication, and when the power is granted, the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained. A municipal corporation has no inherent power of eminent domain, and can exercise it only when expressly authorized by the legislature.'' (10 Ruling Case Law, p. 196, and cases there cited.)

[3] But respondent insists that it has the right here sought to be exercised because of the power which it claims was vested in it by section 262 of its charter, which we have quoted. That section does not directly state that the city shall have power to condemn lands for warehouse uses. The thing directly authorized by the section is that the city shall incur indebtedness and issue bonds therefor, to be designated as harbor improvement bonds, which authorization is granted for certain designated purposes. One of

those purposes is therein described as the purpose of constructing docks, wharves, and warehouses, and "acquiring the necessary land therefor by purchase or condemnation." The method of acquiring land was not a necessary part of the described purpose. It was sufficient that the charter authorized the city to incur indebtedness for the purposes stated and it might then acquire land for those purposes by any lawful means of acquisition. Section 262, as we construe it, was not intended to assert a new power at that time not possessed by any person or corporation within the state, viz., the power to condemn land for warehouse purposes. Moreover, appellants very reasonably argue that section 262, if its terms might be held to apply to all of the purposes contended for by respondent, was open to the objection that it was an attempt at special legislation, contrary to the provisions of section 25 of article IV of the constitution of the state of California, which prohibits the legislature from passing local or special laws granting to any corporation, association or individual any special or exclusive right, privilege, or immunity; or in any case where a general law can be made applicable. We do not ignore the fact that the constitution, as in force at the time of the commencement of this action, provided for the framing of a charter by a city "for its own government, consistent with and subject to this constitution" (Const., art. XI, sec. 8), and that for many years the city of Los Angeles has had such a charter. It was further provided with respect thereto that such charters, "except in municipal affairs, shall be subject to and controlled by general laws." (Const., art. XI, sec. 6, as adopted November 3, 1896.) But it is contended by appellants that the construction and maintenance of public wharves for facilitating commerce and navigation, and the construction and maintenance of warehouses "necessary for the purpose of operating said public wharves," as alleged in the complaint in this action, is a matter of much wider scope in its relation to the state at large and to the general public than is any merely municipal affair. [4] Whether this be so or not, it is true that the exercise of the power of eminent domain for any purpose is not to be classed as a municipal affair. In *City of Tacoma* v. *State* (in the supreme court of the state of Washington), 4 Wash. 64, [29 Pac. 847], the prin-

ciple to which we adhere was applied by denying to a city organized under a freeholders' charter the right to create for itself a "complete code of condemnation proceedings" in the absence of a general law applicable to the exercise of the power in question by that city. The court said: "But the exercise of the power of eminent domain is so high and peculiar a thing that nothing less than an act of the legislature of a state can support it, and that act must not only confer the power, but prescribe the method by which it is to be done. This statement would apply were there no requirement of conformity to the general law, but with the requirement in the same act which confers the power the rule is doubly binding. Because the constitution permits certain cities to frame charters for their own government is no sufficient reason for their assuming a branch of the sovereignty of the state which has no element of municipal government in it, and the provisions of the charter must therefore be held void. Says Judge Cooley, in his Constitutional Limitations (page 653): 'The right to appropriate private property to public uses lies dormant in the state until legislative action is had, pointing out the occasions, the modes, conditions, and agencies for its appropriation.' "

[5] · By amendment of the charter of respondent city, in effect March 25, 1911, in subdivision 10 of section 2 thereof, it was provided, among other things, that the city shall have power to provide, by purchase, lease, condemnation or otherwise, and to own and maintain warehouses. This amendment, even if it were competent for the city to assume the power in that way, could add nothing to the powers possessed by the city, as of the time of the commencement of the action. An action of this character is commenced at the time when the summons is issued. (*City of Los Angeles* v. *Pomeroy*, 124 Cal. 597, 647, [57 Pac. 585].) It was not until the year 1913 that section 1238 of the Code of Civil Procedure was amended [Stats. 1913, p. 544], by inserting in subdivision 4 thereof the word "warehouses" after the words "wharves, docks, piers."

Appellant A. S. Koyer has withdrawn his appeal from that part of the judgment affecting that part of his property described as "Lot 11, Block 92, of the town of San Pedro, except the westerly thirty feet of said lot 11." Sub-

ject to this withdrawal, by reason whereof the appeal of Koyer, as to that ·property, is dismissed—

The judgment entered on the fifth day of September, 1912, against appellants A. S. Koyer and Outer Harbor Dock & Wharf Company, and the final judgment of condemnation entered against them, are, and each of them is, reversed. The order denying the motion of said appellants for a new trial is reversed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 23, 1920.

Angellotti, C. J., Shaw, J., Lennon, J., and Sloane, J., concurred.