[S. F. No. 11326. In Bank.—April 2, 1925.]

JOHN F. GALVIN et al., Petitioners, v. THE BOARD OF SUPERVISORS OF CONTRA COSTA COUNTY et al., Respondents.

[1] INITIATIVE AND REFERENDUM—CONSTITUTION, SECTION 1, ARTICLE IV—CONSTRUCTION.—The provisions of the amendment of 1911 to section 1 of article IV of the constitution, in so far as they relate to the initiative, are to be read together and are to be interpreted as providing for the same general scope and nature of the power reserved respectively to the people of the state at large and to the people of a particular locality, and to the same general method for its exercise.

[2] ID.—POWERS OF PARTICULAR LOCALITIES—GENERAL METHOD.—It was not the intention of the framers of the particular portion of the amendment of 1911 to section 1 of article IV of the constitution, providing for the exercise of the initiative by local divisions of the state government through the use of the more brief and general phrasing thereof to reserve to the people of particular localities a greater right to initiate local legislation or to reserve or give other or greater powers in that regard than those possessed by the people of the state at large, or to

1. Construction of constitutional provisions for initiative and referendum, notes, Ann. Cas. 1916B, 819, 855, 860, 865; Ann. Cas. 1917E, 739, 985.

Initiative and referendum generally, notes, 50 L. R. A. (N. S.) 195; L. R. A. 1917B, 16.

provide for or permit a different method for the exercise of such powers than that specifically provided for in respect to the enactment by that means of state legislation.

[3] ID.—LOCAL INITIATIVE PROCEEDING—PROCEDURE.—The framers of the amendment of 1911 to section 1 of article IV of the constitution, in providing that proposed initiative legislation in regard to matters of general concern should first be submitted to the state legislature for enactment before being presented to the people of the state for adoption or rejection at the next ensuing general election intended that a like procedure should obtain in the use of the initiative by particular communities in matters of local concern, and that the method and procedure for submission in each case should be substantially the same.

[4] ID.—SUBMISSION OF INITIATIVE MEASURE TO SUPERVISORS—NECESSITY FOR.—Under the intendment of the initiative amendment to the state constitution in its application to local legislation, as well as under the express provisions of section 4058 of the Political Code, enacted in order to give effect thereto, initiative ordinances before being submitted to the people of a county for their adoption or rejection must first be submitted to the board of supervisors for legislative action in the way of adoption or rejection by said board, and the proposed ordinance must be in the nature of such legislation as the board of supervisors has power to enact.

[5] ID.—CONSTRUCTION OF AMENDMENT.—The initiative amendment to the constitution must be interpreted in harmony with the other provisions of the organic law of this state of which it has become a part, and section 11 of article XI of the constitution prohibits the adoption by counties, whether acting by means of the initiative or otherwise, of local laws and ordinances which are in conflict with general laws, and it was not the intention of the framers of the initiative amendment or of the people who adopted it to set aside this latter provision of the constitution.

[6] ID. — UNIFORM LAWS — POWER OF LEGISLATURE — LIMITATION. — The grant of power to the legislature to enact general and uniform laws relating to matters referred to in sections 4 and 5 of article XI of the constitution constitutes in itself a limitation upon the power of counties, whether acting through their regularly constituted legislative bodies, or attempting to act directly through initiative legislation, to adopt ordinances or regulations which would have the effect of destroying the uniformity in regard to such matters which the state legislature by the enactment of general and uniform laws was required to create and maintain.

[7] ID.—FRANCHISE TO ERECT A TOLL-BRIDGE—AUTHORITY OF SUPERVISORS—MEASURE OF.—The power of a board of supervisors of a

county with relation to the granting of a franchise for the erection of a toll-bridge across navigable waters is limited by sections 2843 to 2881 and subdivision 35 of section 4041 of the Political Code, and said sections provide expressly and exclusively for the procedure which must precede such grant.

[8] ID.—NOTICE OF APPLICATION—JURISDICTION.—Until the notice of a proposed application for the erection of a toll-bridge across navigable waters has been given, as required by section 2870 of the Political Code, and until a hearing has been had thereon as provided in section 2871 thereof, and the state engineer has been notified of the purpose of the board of supervisors to make such grant and has acted thereon in the manner and to the extent provided in sections 4 and 5 of the act of 1881 (Stats. 1881, p. 76), the board of supervisors of a county has neither jurisdiction nor power to enact an ordinance purporting to grant a franchise for a toll-bridge across navigable waters between counties whose contiguous boundaries are defined thereby.

(1) 36 Cyc., p. 942, n. 21. (2) 36 Cyc., p. 942, n. 21. (3) 36 Cyc., p. 942, n. 21. (4) 36 Cyc., p. 942, n. 21. (5) 36 Cyc., p. 942, n. 21. (6) 15 C. J., p. 469, n. 66. (7) 29 Cyc., p. 342, n. 71. (8) 29 Cyc., p. 342, n. 71.

APPLICATION for a Writ of Mandate to compel a board of supervisors to submit an initiative ordinance to a vote of the electors of a county. Writ denied.

The facts are stated in the opinion of the court.

Brittain & Weise for Petitioners.

Archibald B. Tinning for Respondents.

J. E. Rodgers and A. F. Bray, *Amici Curiae,* for American Toll Bridge Co.

RICHARDS, J.—The petitioners herein apply for a writ of mandate to be directed to the board of supervisors of the county of Contra Costa and the individual members of said board, the respondents herein, commanding them in their said official capacity to submit to a vote of the electors of said county at a general or special election, a proposed initiative ordinance, a copy of which is attached to said petition, under and pursuant to the provisions of section 1 of article IV of the state constitution, relating to initiative legislation, and of section 4058 of the Political Code. By the

terms of the said ordinance which accompanies said petition, it is proposed that there be granted to the Northern California Development Company, a corporation, and one of the petitioners herein, a franchise to construct, erect, and maintain a toll-bridge across the Straits of Carquinez between the county of Contra Costa and the county of Solano, and to take tolls thereon according to a schedule for such tolls as provided in said proposed ordinance, and which also provides for the location and details of the construction and maintenance of said bridge and for the term of said franchise. The petitioners allege that, having submitted said ordinance and franchise to the said board of supervisors of the county of Contra Costa for enactment or for submission to the electors of said county for their adoption or rejection in an initiative election, at a regular meeting of said board, it and the members thereof have refused to either enact the same or to submit the same to the said electors of said county for their vote thereon. Wherefore they apply for this writ. The respondents herein have appeared and demurred to said application, and while they have also filed an answer herein denying certain of the averments therein contained they have, upon the hearing, submitted the cause upon said demurrer and upon the issues of law presented thereby, and to these we shall therefore address ourselves in this decision.

The provisions of the state constitution under which the petitioners herein assert the right to initiate the legislation embraced in the ordinance in question and to have the same submitted to the electors of the county of Contra Costa for their adoption or rejection at an initiative election is that embodied in the amendment to the constitution adopted in the year 1911, purporting to amend section 1 of article IV thereof, so as to reserve to the people those powers of legislation which are known as the "Initiative and Referendum." The provisions thereof applicable to the first of these reserved powers cover the power to initiate amendments to the constitution, state legislation, and local legislation. [1] These provisions of said amendment to the constitution, in so far as they relate to the initiative, are to be read together and are to be interpreted as providing for the same general scope and nature of the power reserved respectively to the people of the state at large and to the people of the particu-

lar locality, and to the same general method for its exercise. It was so held by this court with respect to the referendum clauses of said amendment in the case of *Hopping* v. *Council of the City of Richmond*, 170 Cal. 605, 609 [150 Pac. 977], and a like principle of interpretation equally applies to the initiative clauses thereof. [2] When so read and so interpreted it must be concluded that it was not the intention of the framers of the particular portion of said amendment providing for the exercise of the initiative by local divisions of the state government through the use of the more brief and general phrasing thereof to reserve to the people of such particular localities a greater right to initiate local legislation or to reserve or give other or greater powers in that regard than those possessed by the people of the state at large, or to provide for or permit a different method for the exercise of such powers than that specifically provided for in respect to the enactment by that means of state legislation. [3] We are thus led to the conclusion that when the framers of this amendment provided therein that proposed initiative legislation in regard to matters of general concern should first be submitted to the state legislature for enactment before being presented to the people of the state for adoption or rejection at the next ensuing general election they intended that a like procedure should obtain in the use of the initiative by particular communities in matters of local concern, and that the method and procedure for submission in each case should be substantially the same. The legislature so interpreted these initiative provisions of the constitution in the enactment of section 4058 of the Political Code in the same year in which the said amendment to the constitution was adopted and at the session thereof immediately following its adoption. It is this section of the Political Code upon which the petitioners expressly depend for their procedure and with the terms of which they allege themselves to have complied in all the preliminary steps taken for the initiation of the ordinance in question, which they are seeking by this application to compel the board of supervisors of the county of Contra Costa to submit to the electors thereof at an initiative election to be called and held as in said section provided. Section 4057 of the Political Code provides the procedure for the enactment of ordinances directly by boards of supervisors. Sec-

tion 4058 of said code provides that "ordinances may also be enacted by and for any county of the state in the manner following": Then follows the procedure for initiative legislation in compliance with which the signatures of a petition or petitions by the qualified electors of a county to the number of a certain percentage thereof, properly verified, requesting the adoption or submission to the people of the proposed legislation are to be procured; and which petition or petitions, when signed and certified, shall be presented to the clerk of the county for his examination and certification as to the sufficiency in number and qualifications of the electors signing the same, and which petition or petitions when so found to be sufficient and when so certified by said official, shall by him be submitted to the board of supervisors of the county at the next regular session of said board. This being done the section proceeds to provide that "The board of supervisors shall either: (a) pass such ordinance without alteration at the regular session at which it is presented and within ten days after it is presented; or (b) forthwith the supervisors shall proceed to call a special election at which such ordinance, without alteration, shall be submitted to the vote of the electors of the county." The section also provides for certain contingencies upon which the ordinance may be submitted to the electors of the county at the next general election.

[4] It thus far appears that, under the intendment of the initiative amendment to the state constitution in its application to local legislation, as well as under the express provisions of section 4058 of the Political Code, enacted in order to give effect thereto, initiative ordinances before being submitted to the people of a county for their adoption or rejection must first be submitted to the board of supervisors for legislative action in the way of adoption or rejection by said board. This being so, it would seem to follow of necessity that the proposed ordinance must be in the nature of such legislation as the board of supervisors has power to enact. It was in fact so held by this court in the case of *Giddings* v. *Board of Trustees,* 165 Cal. 695 [133 Pac. 479], in interpreting the act entitled "An act to provide for direct legislation by cities and towns, etc.," approved January 2, 1912 (Stats. Ex. Sess. 1911, p. 131), and which in its general terms coincides with the provisions of section 4058

of the Political Code. See, also, *Matter of Ellsworth,* 165 Cal. 677, 686 [133 Pac. 272]. In determining, therefore, whether the petitioners herein, in the course of their effort to have the ordinance in question submitted to the electors of the county of Contra Costa for their approval or rejection at a general or special election, had the right to request that the board of supervisors should themselves enact without any change the proposed measure and to have such request granted, we must look elsewhere than to the petition embodying such request. We must look to the constitution and laws of the state which contain, define, and limit the powers of boards of supervisors of counties such as the county of Contra Costa is. [5] The initiative amendment to the constitution itself must be interpreted in harmony with the other provisions of the organic law of this state of which it has become a part. To construe it otherwise would be to break down and destroy the barriers and limitations which the constitution, read as a whole, has cast about legislation, both state and local. For example, the constitution provides in section 11 of article XI thereof, that "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws." This provision of the constitution constitutes an inhibition against the adoption by counties, whether acting by means of the initiative or otherwise, of local laws and ordinances which are in conflict with general laws; and it was clearly not the intendment of the framers of the initiative amendment or of the people who adopted it to wipe out this salutary provision of the constitution. Again, the constitution, in sections 4 and 5 of article XI thereof, provides as follows:

"Sec. 4. The legislature shall establish a system of county governments, which shall be uniform throughout the state, and by general laws shall provide for township organizations, under which any county may organize whenever a majority of the qualified electors of such county, voting at a general election, shall so determine; and whenever a county shall adopt township organization, the assessment and collection of the revenue shall be made, and the business of such county and the local affairs of the several townships therein shall be managed and transacted, in the manner prescribed by such general laws.

"Sec. 5. The legislature by general and uniform laws, shall provide for the election or appointment, in the several counties, or boards of supervisors, sheriffs, county clerks, district attorneys, and such other county, township and municipal officers as public convenience may require, and shall prescribe their duties and fix their terms of office."

[6] This grant of power to the legislature to enact general and uniform laws relating to the matters referred to in the foregoing clauses of the constitution constitutes in itself a limitation upon the power of counties, whether acting through their regularly constituted legislative bodies or attempting to act directly through initiative legislation, to adopt ordinances or regulations which would have the effect of destroying the uniformity in regard to such matters which the state legislature by the enactment of general and uniform laws was required to create and maintain. In the case of *Harnett* v. *Sacramento County, ante,* p. 676 [235 Pac. 445], it was held that section 1 of article IV of the constitution, referring to the initiative powers reserved to the electors of counties, could not be held to authorize initiative legislation on the part of the electors of a county in contravention of an enactment of the state legislature under the authority of the foregoing provisions of the constitution providing for the creation and maintenance of a uniform system of county governments. A like principle applies to the initiation generally of local legislation. Since such legislation by the electors of counties must first be submitted to the board of supervisors for its enactment, it follows that it must be such legislation only as the board of supervisors, under the constitution and laws of the state granting, defining and limiting the powers of that body, has jurisdiction and power to enact. (*Myers* v. *Stringham, ante,* p. 672 [235 Pac. 448].) In applying this principle to the immediate matter before us we find that the proposed initiative ordinance which the petitioners herein have requested the board of supervisors of the county of Contra Costa to enact or to submit to the electors of said county for their action thereon is an ordinance granting a franchise to one of said petitioners for the erection and maintenance of a toll-bridge across the navigable waters of the Carquinez Straits, which form the boundary line between the counties of Contra Costa and Solano. [7] The

powers of the board of supervisors with relation to the grant
of franchises of this character are set forth in part 3, title 6,
chapter 4, of the Political Code, and in the sections thereof
between 2843 and 2881, inclusive, and also in subdivision 35
of section 4041 of said code. By the last-named section
the general permanent powers of boards of supervisors are
defined. It is therein provided:

"4041. The boards of supervisors, in their respective
counties shall have jurisdiction and power, under such limi-
tations and restrictions as are provided by law. . . .

"35. To grant licenses and franchises for the construc-
tion, keeping and taking tolls on roads, bridges, ferries,
wharves, chutes, booms and piers, and to grant franchises
along and over the public roads and highways for all law-
ful purposes, upon such terms and conditions and restric-
tions as in their judgment may be necessary and proper, and
in such manner as to prevent the least possible obstruction
and inconvenience to the traveling public."

Section 2843 of said code provides:

"When authority to construct a toll-bridge or to erect
and keep a ferry over waters dividing two counties is de-
sired, application must be made to the board of supervisors
of that county situated on the left bank descending such
bay, river, creek, slough, or arm of the sea."

Section 2844 places the limitations upon the grant of
power embraced in the above-quoted provisions thereof which
are therein referred to, viz.:

"The board of supervisors must not grant authority to
construct or erect a toll-bridge or ferry until the notice of
such intended application has been given as respectively
required in articles two and three of this chapter."

The sections of said code embraced in articles II and
III of the chapter thus referred to define these limitations.
Section 2870 provides that:

"Every applicant for authority to construct a toll-bridge
must publish a notice in at least one newspaper in each
county in which the bridge or any part of it is to be, or if
no paper is published therein, in an adjoining county, once
in each week for six successive weeks, specifying the loca-
tion, the length and breadth of the bridge, and the time at
which the application hereinafter required will be made.
After notice is given, application must be made to the board

of supervisors of the proper county, at any meeting specified in the notice, for authority to construct it."

Section 2871 provides for a hearing before said board after the giving of the notice required by the previous section. It reads as follows:

"On the hearing, any person may appear and be heard. The board may take testimony or authorize it to be taken by any judicial officer of the county; and it may adjourn the hearing from time to time. A copy of the articles of incorporation, certified by the secretary of state, or by the clerk where they are filed, must be attached to and filed with the application if made by a corporation."

Section 2854 of said code provides:

"The owner of land on either side of the waters to be crossed, and the owner of the land on the left bank descending over the owner of land on the right bank, is entitled to preference in procuring authority to construct a bridge or ferry; but where such owner fails or neglects to apply for such authority within a reasonable time after the necessity therefor arises, the board of supervisors may grant such authority to another."

Section 2875 of said code contains the following provision:

"All bridges constructed under this chapter crossing navigable streams must be so constructed as not to obstruct navigation, and must have a draw or swing of sufficient space or span to permit the safe, convenient and expeditious passage at all times of any steamer, vessel, or raft which may navigate the stream or water bridged."

The foregoing provisions of the Political Code were enacted upon its adoption in the year 1872. In the year 1881 the state legislature adopted a general law entitled "An act to provide for bridges across navigable streams and across estuaries, ponds, swamps, or arms of bays that may be outside of the line of navigable waters"; which act is still in full force and effect. (Stats. 1881, p. 76.) By section 4 of said act it is provided:

"Whenever the supervisors of any county, or counties, desire to erect a bridge on any public highway, or to grant the privilege so to do to any individual or corporation, across a navigable stream, under the provisions of this act, said board or boards shall notify the state engineer of such purpose, and of the precise point where such bridge is pro-

posed to be located. The state engineer shall, within ten days of the receipt of such notice, designate the width of the draw to be made in such bridge, and also the length of the spans necessary to permit the free flow of water.''

Section 5 thereof further provides:

''The communication from the state engineer, fixing the draw and spans, shall be spread upon the minutes of the board, and any bridge constructed at that point shall be in conformity therewith; *provided, however,* that the state engineer may, upon hearing before him, had upon application of any person or body interested, made within ten days after the receipt by said board of supervisors, of said communication of said engineer, change his first plans, in which case the modified plans must be so spread upon the minutes, and shall stand in place of the original; *provided, however,* that before such hearing is had, the said engineer must give ten days notice by publication in some newspaper published in the county or counties from which the application came, of the time and place of the hearing.''

The foregoing provisions of the Political Code and of the general law above quoted define and limit the powers of the board of supervisors of the county of Contra Costa in the manner of enacting legislation granting franchises for the erection and maintenance of toll-bridges across the navigable waters which form the boundary line between said county and the county of Solano, and provide expressly and exclusively for the procedure which must precede such grant.    [8] Until the notice of the proposed application for such franchise has been given as required by section 2870 of said code, and until a hearing has been had thereon as provided in section 2871 thereof, and until the state engineer has been notified of the purpose of the board of supervisors to make such grant and has acted thereon in the manner and to the extent provided in the sections of the act of 1881 above referred to, the board of supervisors of the county of Contra Costa have neither jurisdiction nor power to enact any ordinance purporting to grant a franchise for a toll-bridge across said navigable waters and between the counties whose contiguous boundaries are defined thereby.    It is not shown or claimed by the petitioners herein that the notices required by the foregoing sections of the Political Code or of the general law above referred to have been given, or that in

pursuance thereof any such hearing as is therein provided
for has been held, or that the state engineer has acted in
regard to those matters wherein by the statute of 1881 his
action prior to the grant of the proposed franchise is required,
nor are we referred to any authority which would sustain
a holding that the giving of such notices, the holding of such
hearing, and the notification to and action of the state engi-
neer as to the matters wherein his action is required by said
statute are not jurisdictional prerequisites to the exercise by
said board of the power to enact legislation granting said
franchise.   The two contentions which the petitioners make
in that regard are, first, that these are merely administrative
acts on the part of said board, not jurisdictional in their
character or requirement.   We are unable to approve this
contention.   It is true that under the terms of section 2843
of the Political Code the board of supervisors of the county
upon the left bank of the stream or straits, descending, which
is to be spanned by the toll-bridge in question, is given pref-
erence in the matter of the initiation and enactment of the
legislation embracing the grant of a franchise therefor, but
the officials, the electors, the residents and property owners
of the adjoining county are also vitally interested in the
matter of granting or refusing to grant such franchise and
in the terms and conditions of such grant.   The owners of
the land on each bank of the waters at the points thereon
where the structure is to be placed are also vitally interested
in the question as to whether such franchise should be
granted and are entitled to notice of the application there-
for, to the end that they may have an opportunity to exercise
the preferences on the matter of awarding such franchise
which is accorded to them by the terms of section 2854 of
said code, or in case they do not see fit to exercise such
preference, to resist, if they are so advised, the granting
of a franchise for a structure, the erection of which would
compel the transfer or condemnation of the respective hold-
ings.   The requirement of notice to the state engineer is
equally vital, since the state at large is interested in the
construction of bridges across its navigable waters.   The
second contention of the petitioners, as to the jurisdic-
tional necessity of the notices and hearings above referred to,
is that as to the notices the initiative ordinance is a sub-
stitute for these in the opportunity afforded to the people

to vote upon the passage of the ordinance. This, however, is not the fact as to either the people upon the right bank of the strait, nor is it true as to the notice required to be given to the state engineer. As to the latter, the petitioners insist that in providing for the subsequent approval by the state engineer of the details of construction of the bridge this requirement of the statute is satisfied. But this would not be so, for the double reason that the vital requirements of a statute cannot be dispensed with by any sort of substitution, and that the subsequent action of the state engineer, even if allowable, would or might so change the substantial form of the structure as to require the construction of such a bridge as the grantee of the franchise would not be willing to construct or as the electors would not have been willing to approve. Other reasons might well be suggested, showing that the foregoing prerequisites to action on the part of the board of supervisors of said county in either adopting an ordinance purporting to grant such a franchise as the petitioners herein are seeking, or in submitting to the electors of their county at an initiative election the question as to whether such franchise should be granted or denied, are jurisdictional, and that in the absence of a showing that these prerequisites to the exercise of such power have been complied with, the board of supervisors have no power to take either course of action in the premises. The conclusions thus far arrived at render unnecessary a consideration of the question as to whether the so-called Broughton Act (Stats. 1905, p. 777) is applicable to the form and content of the franchise applied for in this particular case.

For the foregoing reasons we are of the opinion that the application of the petitioners herein for a writ of mandate must be denied. It is so ordered.

Lennon, J., Seawell, J., Myers, C. J., Shenk, J., Waste, J., and Lawlor, J., concurred.