[Civ. No. 8966. First Appellate District, Division One.—January 8, 1934.]

MYRA DAVIS MACKAY, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

John J. Beck for Appellant.

Ray L. Chesebro and Erwin P. Werner, City Attorney, Frederick von Schrader, Assistant City Attorney, and Jerrell Babb and Robert J. Stahl, Deputies City Attorney, for Respondents.

McNUTT, J., *pro tem.*—Plaintiff sued to quiet title to lands which were sold to the City of Los Angeles (defend-

ant) for a delinquent assessment levied against them to pay the expense of their acquisition by condemnation for park purposes. A demurrer was sustained and judgment was entered against plaintiff, who has appealed on the judgment-roll.

The acquisition of said lands resulted from proceedings instituted by the respondent City of Los Angeles under section 2 of the Park and Playgrounds Act of 1909 (Stats. 1909, p. 1066), which reads as follows: "Before ordering the acquisition of any land or lands for any purpose authorized in section 1 of this act the city council shall pass an ordinance declaring its intention so to do." Section 1 of the act provides that "whenever the public interest or convenience may require, the city council of any municipality shall have full power and authority to acquire by condemnation any land situate in such municipality for public park or public playground purposes".

Appellant contends that pending the accomplishment of the proceeding thus instituted the City of Los Angeles adopted a charter, one of the provisions of which, numbered section 176, follows: "No real property shall be acquired by the city for park sites unless such sites are first approved by the Board of Commissioners. Said board shall have full control over all park sites and no such sites shall be devoted to any other purpose in whole or in part without permission from said board," and that therefore the proceedings were abortive because the sites in suit were not first approved by the board of park commissioners. The argument is grounded upon the propositions: that "City Charter provisions are strictly construed and must be strictly followed" (*O'Melveney* v. *Griffith,* 178 Cal. 1 [171 Pac. 934]); that the ordinance of intention to acquire the park sites in question was not finally adopted until after the charter provision requiring the approval of the board of park commissioners had become effective; that the park sites were not acquired as a matter of law until after the adoption of the aforesaid charter provision.

That proceedings under charter provisions are *stricti juris* may be true as a legal abstraction, but when another provision of the said charter is considered it is apparent that there was in this case no noncompliance with the charter.

The chronology of the significant events follows:

June 30, 1925, ordinance of intention passed by city council. (Clerk's Trans., p. 3, 1. 8.)

July 1, 1925, section 176 Los Angeles City Charter, *supra*, became effective.

July 3, 1925, ordinance of intention approved by mayor. (Clerk's Trans., p. 3, 1. 15.)

July 8, 1925, first publication of notice of intention. (Clerk's Trans., p. 3, 1. 16.)

September 18, 1925, protests denied by Los Angeles city council. (Clerk's Trans., p. 3, 1. 22.)

October 26, 1925, condemnation ordinance finally adopted. (Clerk's Trans., p. 4, 1. 22.)

Section 439 of the same charter provides that "No special proceedings relating to local improvements or to local assessments, pending at the date this charter takes effect, shall be invalidated or affected in any respect, by reason of this charter taking effect, but all such special proceedings shall continue, in accordance with the law applicable thereto."

The subject matter of this action was a special proceeding relating to local improvements or local assessments and it was pending at the date the charter took effect. Without regard to whether the ordinance of intention had been finally adopted the proceeding was pending because the first step necessary to be taken in the condemnation proceeding under the Park and Playgrounds Act was the passage of such ordinance.

The framers of the charter of 1925 apparently apprehended the procedural overlapping relied upon by appellant and averted the consequences by the saving clauses of section 439.

In the closing brief of appellant is found the following: "Conceding for the sake of argument, but not admitting, that section 176 of the Los Angeles City Charter does not apply in this instance, we are nevertheless faced with the question: 'What is the law applicable to the proceedings in question?' In other words what did the preceding city charter of Los Angeles say on the subject?" She further contends that the charter of Los Angeles adopted in January, 1889, and amendments thereto, confer no power upon the city council to select and purchase park sites, but that said charter, as amended in section 118 (Stats. 1911, p. 2112), provides that the board shall have power: "(c) To

purchase and lease property for park purposes . . . , and to have general supervision, control, care and custody of all real and personal property owned by the city of Los Angeles and used in and about the parks or park system of said city, and generally to do any and all things that may be necessary to carry out the spirit and intent of this charter in establishing, maintaining, operating, improving and enlarging the public parks and park system of the city of Los Angeles.'' To this supplemental argument respondent did not reply. Perhaps, if the park commissioners whose powers are thus defined had had money with which they desired to purchase public parks, they might have done so, but the section quoted does not confer upon that board the right to institute condemnation proceedings. Since a municipal corporation has no inherent power of eminent domain and can exercise it only when expressly authorized by the legislature (*City of Los Angeles* v. *Koyer,* 48 Cal. App. 720 [192 Pac. 301]), it follows that the board of park commissioners, a department of the city, could not by implication exercise such power.

No other ground for reversal being urged, the judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 8, 1934.