[Civ. No. 15787. First Dist., Div. One. Aug. 24, 1953.]

CARROLL M. ALEXANDER et al., Petitioners, v. J. PEARCE MITCHELL, as Mayor, etc., et al., Respondents; JAMES G. MARSHALL, as Mayor, etc., et al., Substituted Respondents.

Aaron M. Sargent for Petitioners.

Arnold Rumwell and Kirkbride, Wilson, Harzfeld & Wallace for Respondents.

BRAY, J.—Petition for writ of mandamus to compel respondent city clerk to examine and certify, and respondents mayor and councilmen of the city of Palo Alto, to pass or submit to the electorate, a certain ordinance.

### QUESTIONS PRESENTED

1. May the people of a municipality abrogate the right of eminent domain, or is that right a matter of statewide concern?

2. May the people of a municipality declare that off-street parking places may not be acquired and improved by district assessment proceedings?

3. May the people of a municipality, contrary to state law, make assessment district proceedings subject to referendum, and may they by initiative repeal such projects already started?

4. Must an initiative ordinance invalid in most part be submitted to the electors because it contains a severability clause?

### Record

Petitioners claim to be qualified electors of Palo Alto and signers and circulators of the initiative petition hereafter described, and to represent the 2,041 alleged electors who

signed the petition. Palo Alto is a charter city. On February 20, 1953, petitioners filed said petition with respondent city clerk. It is conceded that the number of signatures, if the signers are qualified electors, is numerically sufficient under the Palo Alto Freeholders' Charter to require submission of the proposed ordinance at a special election. At the council meeting of March 2d, respondent city clerk, without examination of the signatures, presented the petition and asked for instructions. The council thereupon adopted a resolution instructing said clerk to file the petition, and directing that no further action be taken either by the clerk or the council.

Filed with the petition is an affidavit setting forth the history of the installation in Palo Alto of public parking meters and the planning of municipally operated off-street parking places and opposition thereto. This history culminated in the adoption by the council of Resolutions of Preliminary Determination 2381 and 2382. The first resolution determined that public convenience and necessity required the acquisition and improvement of University Avenue District Off-Street Parking Project No. 52-13 at an estimated cost of $250,000. The second resolution made a similar finding as to University Avenue District Off-Street Parking Project No. 52-14 to cost $1,150,000. Each project is to be financed by bonds against the respective district.

*The Proposed Ordinance*

It is denominated "An Ordinance to Protect Referendum Rights and Prohibit Eminent Domain in Parking Lot Proceedings." It is divided into three parts: Part I, "Initiative and Referendum." Section 1, "Declaration of Rights." It reaffirms and declares that all political power is derived from the people who have direct legislative power in municipal affairs. This power is expressly reserved for them in the California Constitution, the Freeholders' Charter, and is based on freedoms secured by the Declaration of Independence and the United States Constitution. Section 2, "Findings." It is found and determined (a) that proceedings for the selection, location and acquisition of sites for off-street motor vehicle parking places raise questions of direct interest and concern to the entire community. Referendum rights are involved. The issues are not limited to parties residing, or owning property or doing business within proposed assessment districts. (b) There is a general community interest in

all parking lot projects because of their direct relation to (1) zoning classifications, (2) community planning, (3) public safety, (4) traffic congestion, (5) tax exemption, (6) tax burden, and (7) public credit. (c) The operation of a municipal off-street parking place is a semi-commercial enterprise, and its area is not a part of the public street system of the city. Section 3, "Referendum." All acts, ordinances and resolutions of the council designating or selecting sites for off-street parking are declared to be subject to referendum. Future measures of this type shall contain a clause reserving referendum rights. All ordinances and resolutions adopted in violation of this requirement are declared to be invalid.

Part II, "Eminent Domain," section 4, "Findings." It is found and determined (a) That there is no public necessity justifying or requiring the exercise of the right of eminent domain by the city or any board, commission, officer or agency thereof, to acquire off-street parking sites. (b) Any land required for this purpose can be obtained by negotiation and purchase at its fair market value without use of the drastic power of condemnation. (c) These findings do not apply to proceedings to acquire parking areas adjacent to land occupied by public buildings.

Part III, "Miscellaneous," section 5, "Repeal." All resolutions, ordinances and other acts of the council respecting the "University Avenue Parking Lot Project" (Resolutions 2381, 2382 and the several modifications, amendments and revisions thereof) are repealed and rescinded. Section 6, "Operation." The ordinance supercedes and takes precedence over any and all ordinances, resolutions and other acts of the council in conflict therewith. It is retroactive and applies to pending actions as well as proceedings hereafter. The findings of fact are legislative determinations and binding as such, and are conclusive in all respects as provided by the Constitution and laws of this state. Section 7 is a severability clause.

*Objectives of Proposed Ordinance*

It has three main objectives: 1. It finds, in effect, that off-street parking is such a matter of general concern that it may not be done by district assessment proceedings or if so done the proceedings are subject to referendum. 2. It finds, in effect, that eminent domain proceedings cannot be applied to the acquisition of off-street parking sites, except when such sites are adjacent to public buildings. 3. It repeals all proceedings of the city council concerning off-street parking

heretofore had, particularly the resolutions starting the two University Avenue District projects.

## 1. EMINENT DOMAIN

Petitioner claims that the people of a community have reserved the right to take away from the city council, to whom the right has been given by charter, the right to determine the necessity for the use of eminent domain in the acquisition of off-street parking sites. As hereafter pointed out with reference to the same claim made as to assessment districts, the removal of such right, if the power exists, could only be done by charter amendment and not by ordinance.

While the intitiative and referendum deal with the reserved powers of the people and should be liberally construed to uphold the power wherever that reasonably can be done (*Collins* v. *City and County of San Francisco,* 112 Cal. App.2d 719 [247 P.2d 362]), nevertheless the right of eminent domain is a matter of statewide concern and being such cannot be abrogated by the people of a municipality. A city has no inherent power of eminent domain. (*City of Los Angeles* v. *Koyer,* 48 Cal.App. 720 [192 P. 301]; *Mackay* v. *City of Los Angeles,* 136 Cal.App. 180 [28 P.2d 706].) It exercises it only because authorized by the state Legislature. Section 1241, Code of Civil Procedure, vests the power to make the determination of convenience and necessity in the members of "the legislative body of a . . . city." Those members could not do away with the power of eminent domain; neither can the people of a particular community.

The legislative body, the council, can determine whether in a particular instance the public convenience and necessity require its exercise, but it could not determine, as this ordinance attempts to have the people do, that as to all off-street parking sites hereafter to be acquired the power need not be exercised. Such a finding, in effect, is an attempt to completely abrogate that power,—a vastly important power. Moreover, to make a blanket finding that any land required in any off-street parking project can be acquired by negotiation and purchase at its fair market value without condemnation is on its face absurd. The effect of the abandonment of the right of eminent domain would mean that if the city desires to acquire sites, the city would have to pay any price the owners might ask or else abandon the project. The very fact that the city can condemn in many instances causes the

owner to accept the fair market value. Thus, it is an attempt by indirection to do away with all off-street parking altogether.

In *Riedman* v. *Brison,* 217 Cal. 383 [18 P.2d 947], mandamus was sought to compel the submission of an initiative ordinance to have the city withdraw from a water district. It was held that the statute which provided the power to make the determination of convenience or necessity to withdraw from the district vested such power in the members of the " 'legislative body' of the city," and not in the people. Because this was a power delegated by the Legislature it was not a municipal affair, and only as to municipal affairs can the initiative provisions of a charter apply.

### 2. Elimination of District Assessment Proceedings

Petitioner contends that the people have reserved to them all legislative rights; that the determination of whether the public necessity and convenience requires the acquisition and construction of off-street parking projects is a legislative matter; therefore the people may take away from the council the right to make such determination and make it themselves. ■ Disregarding the state question involved and assuming the correctness of the contention, the taking away from the council of the right to make such determination cannot be done by ordinance; it could only be done by a charter amendment. The charter gives "home rule" and provides that the city of Palo Alto, by and through its council and other officials, "shall have and may exercise all powers necessary and appropriate to a municipal corporation" which are not prohibited by the Constitution or the charter itself, and that all powers granted to the city shall, except as herein otherwise provided, be exercised by the council. Pursuant to these provisions, Palo Alto adopted its Improvement Procedure Code which provides for the procedure and financing of special assessment projects. The resolutions were adopted pursuant to the procedure code. Thus, pursuant to its charter which gives the city complete "home rule" the council has merely exercised powers given it in the charter by enacting the code and these resolutions. ■ Section 8 of article XI of the Constitution provides the exclusive method for amending city charters, and any attempt to amend a charter other than by that method prescribed in section 8 is void. (*Uhl* v. *Collins,* 217 Cal. 1 [17 P.2d 99, 85 A.L.R. 1370]; *Garver* v. *Council of City of Oakland,* 96 Cal.App. 560 [274 P. 375].)

■ As the determination of the necessity for the use of eminent domain is a matter which the people of the state have granted only to the council of a municipality and have not reserved to the people thereof, so, too, has the determination of the necessity for construction of public improvements by the district assessment plan been limited to such councils. Section 17 of article XIII of the Constitution provides: "All proceedings undertaken by *any chartered city* . . . for the construction of any public improvement, or the acquisition of any property for public use, or both, where the cost thereof is to be paid in whole or in part by special assessment . . . shall be undertaken only in accordance with the provisions of law governing: . . . and particularly in accordance with" certain provisions of the "Special Assessment Investigation, Limitation and Majority Protest Act of 1931 . . ." "Notwithstanding any provisions for debt limitation or majority protest . . ." if after the giving of notice, etc., the *legislative body* of any chartered city determines by a four-fifths vote of its members that the public convenience and necessity require such improvements or acquisitions the debt limitation and majority protest shall not apply. "Nothing contained in this section shall require the *legislative body* . . . to prepare or to cause to be prepared, hear, notice for hearing or report the hearing of any report as to any such proposed construction or acquisition or both." (Emphasis added.) ■ It is obvious from a study of this section that the Constitution places the determination of the necessity for public improvement districts in the city council and that such fact is inconsistent and cannot coexist with the exercise by the people of a municipality of the powers of initiative and referendum. The delegation of this power to the governing body of a municipality (here the city council) only appears in the acts dealing with parking districts: the Vehicle Parking District Law of 1943 (Sts. & Hy. Code, § 31500 et seq.); the Parking Law of 1949 (Sts. & Hy. Code, § 32500 et seq.); the Municipal Parking Revenue Bond Law of 1949 (Sts. & Hy. Code, § 33800 et seq.); the Parking District Act of 1951. The following language from *Chase* v. *Kalber*, 28 Cal.App. 561 [153 P. 397], although there directed to street improvement district projects, is equally applicable to off-street parking projects: "This proposition, it is true, is to be considered only in aid of the ascertainment of the intention of the people as to the scope of those powers or of determining whether they

intended certain limitations in the exercise thereof or that certain acts of a legislative character should not be made amenable thereto. For, in examining and ascertaining the intention of the people with respect to the scope and nature of those powers, it is proper and important to consider what the consequences of applying it to a particular act of legislation would be, and if upon such consideration it be found that by so applying it the inevitable effect would be greatly to impair or wholly destroy the efficacy of some other governmental power, the practical application of which is essential and, perhaps, as in the case of the power to compel the improvement of streets, indispensable, to the convenience, comfort, and well-being of the inhabitants of certain legally established districts or subdivisions of the state or of the whole state, then in such case the courts may and should assume that the people intended no such result to flow from the application of those powers and that they do not so apply." (Pp. 569-570.)

"It must become obvious upon a moment's reflection that the hearings thus contemplated and, in fact, expressly provided for, could not be accorded property owners if proceedings in street improvement or any of the essential acts involved therein were subject to the test or conditions of either the initiative or the referendum." (P. 573.)

"Moreover, the effect of applying those powers to such proceedings would be to delay, to the great inconvenience of the public, street improvement. Indeed, under such circumstances, it would be difficult if not impossible to make progress in street improvement in the cities and towns of the state, and from that situation the public would not alone suffer but such cities and towns themselves would be seriously handicapped in the march of progress which is now of the spirit of the times." (P. 574.)

As said in *McNeil* v. *City of South Pasadena,* 166 Cal. 153, 155-156 [135 P. 32, 48 L.R.A.N.S. 138] : "The improvement, regulation, and control of the highways within a municipality call for the exercise of a delegated governmental power, a function which the municipality itself, neither by ordinance nor by contract, can surrender or impair. . . . It is its duty to exercise those powers upon every proper occasion. It could as well attempt to surrender all or part of its police powers as to attempt to bind itself not to perform the administrative duty and trust in regard to its public streets imposed upon it by general law."

Yet this surrender, both as to its power to create parking place districts and its right of eminent domain as applied thereto, is the very purpose of the proposed ordinance.

██ In 1950 section 18¼ was added to article XI of the Constitution. It provides that whenever under the laws of the state any city or district (among other public bodies) is authorized to construct or acquire parking lots, garages or other automotive parking facilities and for the payment of the costs of any thereof, to issue bonds or other securities payable in whole or in part from revenues of such parking facilities, the public body of the territory in which such parking facilities are situated is authorized to pledge as additional security for the payment of such securities any or all revenues from its street parking meters. This recognition of the power of *districts* as well as of other public bodies to issue bonds for the payment for parking facilities, as well as the grant of power to pledge revenues from street parking meters, is as said in *Chase* v. *Kalber, supra,* 28 Cal. App. 561, referring to powers granted and systems established for street improvement, inconsistent and cannot coexist with the powers of initiative and referendum, nor were they intended by the people to come within either.

In *Dwyer* v. *City Council,* 200 Cal. 505 [253 P. 932], it was held that under the Berkeley City Charter an ordinance reclassifying certain property designated in the comprehensive citywide zoning ordinance·was subject to a referendum. The court pointed out that although residents of the particular locality rezoned might be more immediately and apparently affected, the electors of the entire municipality had a substantial interest in the citywide zoning scheme, and that the zoning law from its beginning was treated by the council as a general, comprehensive plan molded and balanced with reference to the city as a whole, and that that fact distinguished the situation from street improvement cases. Moreover, in *Hurst* v. *City of Burlingame,* 207 Cal. 134 [277 P. 308], where the court held that a zoning ordinance could not be adopted by initiative, due, among other things, to the impossibility of complying with the Zoning Act of 1917, the court considered the Dwyer case and held that the question of the operation of the initiative law to proceedings affected by the zoning act was not considered therein.

In *Hopping* v. *Council of City of Richmond,* 170 Cal. 605 [150 P. 977], where the court held referendum applicable

to a resolution of the city council dealing with the location and construction of a city hall, because they were matters of citywide interest, the court recognized the rule applicable here saying (p. 617) : ''There may be grounds for excluding from the operation of these powers legislative acts which are special and local in their nature and in which the entire body of citizens who shall exercise the power of referendum and initiative is not interested, such as resolutions to make local improvements and the like.''

### 3. REFERENDUM

The ordinance purports to make all off-street parking assessment district proceedings subject to referendum. Petitioners claim that by inherent right of the people to do anything the city council can do and because such proceedings are not local in their nature but of citywide concern, the people can make such proceedings subject to referendum. Just as initiative will not lie except in matters of municipal affairs, so, too, referendum will not lie. The power to determine the necessity and advisability of parking district proceedings has been delegated to the governing body of the city, not to the people. Such power is not inherent in the city. It comes only from the Legislature and to the particular body to which the Legislature has committed the power. To support their contention that such a district is of citywide concern only, petitioners contend that such off-street parking projects are not similar to street improvement projects which have been held to be local in nature, and therefore not subject to referendum. (See *Chase* v. *Kalber, supra,* 28 Cal.App. 561; *Starbuck* v. *City of Fullerton,* 34 Cal.App. 683 [186 P. 583] ; *St. John* v. *King,* 130 Cal. App. 356 [20 P.2d 123].) Practically all the arguments they make to distinguish off-street parking projects from street improvement projects would apply to the latter, and yet the latter have been held to be local in character. Thus, the selection and location of most streets affects the convenience of every member of the city; traffic congestion is increased or reduced by their selection; persons outside the proposed district use the streets of that district; streets affect zoning classifications; the property taken for streets goes off the tax rolls; the maintenance of parking meters on the streets is a semi-business enterprise. There can be but little question that while off-street parking projects are matters of citywide concern in the same sense that anything done

by a municipality is, essentially they are primarily of local interest just as street and sewer projects are.

*City of Whittier* v. *Dixon,* 24 Cal.2d 664 [151 P.2d 5, 153 A.L.R. 956], holds that the Vehicle Parking District Act of 1943 is a general law expressly providing municipalities with the power of eminent domain to acquire parking lots. "Just as public streets can be used for the parking of motor vehicles, property can be acquired for the same use. Moreover, public parking places relieve congestion and reduce traffic hazards and therefore serve a public purpose. . . . The levy of a special assessment is justified if the improvement is a public one and the property to be assessed will receive a special benefit." (P. 667.) ▮ It is a matter of common knowledge that in all our cities, large and small, due to congestion caused by the increase in the use of motor vehicles, downtown business and property values are decreasing. ▮ If in the judgment of the city council it is of public convenience and necessity, and a majority of the property owners in a given area desire to form an assessment district to pay for the cost of acquiring and constructing an off-street parking project, it is obviously a matter of concern to them rather than to the whole city, which will not be called upon to pay any portion of such cost. In *City of Whittier* v. *Dixon, supra,* 24 Cal.2d 664, it was held that parking places tend to stabilize a business section and thereby benefit the property in its vicinity so as to justify the levy of a special assessment. This, in effect, may be a holding that parking places are portions of public streets. If they are not, they are so similar in use and purport as to come within the same rule. Petitioners have set forth in their history of the background leading up to the commencement of these proceedings, the recommendations of a citizens' committee that moneys from street parking meters be used for the acquisition and construction of off-street parking places. The proceedings for the University Avenue projects adopted by the council limit the payment of their costs to the districts. No general fund or tax is involved.

There is nothing in the proceedings or in the proposed ordinance which requires a discussion of what the situation would be if the city's moneys were to be contributed to the district improvement.

What the people cannot do by referendum they cannot do by initiative. The decisions in *Chase* v. *Kalber, supra,*

28 Cal.App. 561, and the other cases above cited apply to the attempt to repeal the off-street parking district proceedings already commenced.

Attempting to take away from the city council the power of determining the necessity for the use of eminent domain granted to it by the Legislature is somewhat analogous to the situation in *Simpson* v. *Hite*, 36 Cal.2d 125 [222 P.2d 225]. There a proposed initiative ordinance was presented to the Los Angeles County Board of Supervisors, which repealed the resolution of the board designating and pursuant to which the county had acquired a site for municipal and superior court buildings, declaring the will of the people that such site be used for parking or some other useful purpose, and designating another site for the courts' building or buildings. In denying the right of initiative the court pointed out that the Legislature by state law required the board of supervisors to provide suitable quarters for courts, thereby declaring the legislative policy that the board should provide the quarters, thereby including the selection of the site, as well as the character and size of the building or buildings. Therefore it is beyond the power of the electorate of the county to repeal or amend the state policy. While the court held that prescribing the policy and duty was the legislative act of the state and carrying out the policy was an administrative function delegated to the board, while in our case the carrying out of the policy of eminent domain delegated to the council is a legislative matter, nevertheless the principle applies here. ■ ''Where a series of acts by a board are all directed to the end of carrying out a duty imposed on the board by the law of the state, and where it is sought by a citizens' committee of the county to interrupt the process ⁴hrough repeal by the initiative of one or more of the steps theretofore taken by the board, the acts sought to be repealed are to be judged, as legislative or administrative, not as isolated acts but in their true relationship as a part of the entire project. . . . The initiative or referendum is not applicable where 'the inevitable effect would be greatly to impair or wholly destroy the efficacy of some other governmental power, the practical application of which is essential . . .' (*Chase* v. *Kalber* (1915), 28 Cal.App. 561, 569-570 [153 P. 397] [improvement of city streets] ; see *Hunt* v. *Mayor & Council of Riverside* (1948), 31 Cal.2d 619, 628-630 [191 P.2d 426].) ■ Similarly, where a state act specifies the steps to be taken by a local body in enacting legislation, an

initiative measure cannot be validly adopted unless such steps are taken. (*Hurst* v. *City of Burlingame* (1929), 207 Cal. 134, 140 [277 P. 308] [zoning, lack of notice and hearing]; *Galvin* v. *Board of Supervisors* (1925), 195 Cal. 686, 696-698 [235 P. 450] [toll bridge franchise, lack of hearing, notice to state engineer, etc.].)'' (Pp. 133, 134.)

In *Chase* v. *Kalber, supra,* 28 Cal.App. 561, the right of referendum to a resolution establishing grades of streets was denied. This was a legislative act of the council. The court held it was never the intention of the people in reserving the right of initiative or referendum to have it apply to such a legislative proceeding. (See *Starbuck* v. *City of Fullerton, supra,* 34 Cal.App. 683, to the same effect concerning street opening proceedings.)

### 4. EFFECT OF INVALIDITY

As we have shown, practically all of the many provisions of the ordinance are invalid. All that is left is the Declaration of Rights in part I, section 1, which is merely a reaffirmance of the general rights of the people as established by the United States and California Constitutions, the Declaration of Independence and the Palo Alto Freeholders' Charter. Under the severability clause, section 7, if all the rest of the ordinance were invalid (and it is), section 1 would be valid. It, however, would be meaningless. Petitioners contend that because of the severability clause the ordinance, regardless of the invalidity of any portion of it, must be submitted to the people and its invalidity determined after its adoption. Our determination that practically the whole of the ordinance is invalid brings the ordinance (assuming any of it to be valid) under the ruling in *Bennett* v. *Drullard,* 27 Cal.App. 180 [149 P. 368]. There the city clerk and council had refused to submit to the people an initiative ordinance containing three alternative propositions. The proponents conceded that two of the propositions were void but contended that the initiative petition should be considered as presenting three ordinances, one of which would be valid and therefore the council should have eliminated the void portions and submitted the valid portion. The court held that the council had no such power and that because of the invalidity of portions of the ordinance, the council properly refused to submit the ordinance to the people. Petitioners here seek to distinguish the Bennett case from ours by pointing out that in that case the petitioners urged that the city

council delete the void portions of the ordinance and present the valid portions to the people, while in our case petitioners seek to have the whole ordinance presented to the people, and, if adopted by them, have the valid portions take effect. While factually there is this distinction between the two cases, it is a distinction without a difference. In the Bennett case, in addition to holding that the council could not separate the wheat from the chaff, the court flatly held that the proposed ordinance could not be submitted without deletion for the reason that portions of it were void and (p. 187) ''That their inclusion in the petition renders the entire petition void.'' Cases like *Klassen* v. *Burton*, 110 Cal.App.2d 539 [243 P.2d 28], holding that ordinances containing void emergency clauses are saved by severability clauses do not apply to initiative ordinances where the void subject matter is an integral part of the ordinance to be submitted to the voters rather than merely the effective date.

While this is one ordinance dealing with one general subject there are really three principal matters set forth in it, which are fundamentally different. One is the attempted application of the initiative and referendum to parking district proceedings, the second is the attempted abandonment of the right of eminent domain in such proceedings. If only one of these matters were invalid, such invalidity would preclude the submission of the measure. The third is the repeal of the University Avenue District proceedings. While we have been fully mindful of the fact that the petition of over 2,000 voters should not, except for strong legal reasons, be set aside, and that the right of the initiative is an important right of the people and should not be curtailed unless absolutely necessary, the opportunity to exercise such right must be given them so that they can exercise it in a reasonably intelligent manner. Assume, for example, that the provision repealing the present district proceedings were valid and the other provisions invalid. An elector who might be in favor of the University Avenue proceeding but desires to abrogate the right of eminent domain or to apply the initiative and referendum generally, or vice versa, would be required to vote against the proceedings which he favored in order to vote for either or both of the other matters. As both of these matters are invalid, he would be voting against the very proceeding he did not want to vote down only to find that what he voted *for* was invalid.

The alternative writ is discharged and the petition for a peremptory writ denied.

Peters, P. J., concurred.

WOOD (Fred B.), J.—I concur in the majority opinion in every respect except the dictum that if only one of the principal matters set forth in the ordinance were invalid such invalidity would preclude the submission of the measure. I would withhold formulating and expressing an opinion on that subject until a case comes before us which presents that question for decision.

A petition for a rehearing was denied September 23, 1953, and petitioners' application for a hearing by the Supreme Court was denied October 22, 1953. Schauer, J., was of the opinion that the petition should be granted.