[Sac. No. 654. In Bank. — December 3, 1901.]

|134 621|
|s141 47|

# D. C. POOL et al., Respondents, v. PARMELIA SIMMONS et al., Appellants.

FERRY FRANCHISE — RIVER BETWEEN COUNTIES — SALE TO HIGHEST BID-
DER NOT REQUIRED — APPLICATION OF STATUTE. — The act of 1893
(Stats. 1893, p. 288) requiring the sale of franchises to the highest
bidder does not apply to a franchise for a ferry over a river be-
tween two counties; but such franchise is regulated by sections
2843 et seq. of the Political Code, the provisions of which are not
repealed, either expressly or by implication, by the act of 1893.

ID. — STATUTORY CONSTRUCTION — DEPARTURE FROM LITERAL IMPORT. —
Where it is evident from the whole tenor of a statute, and from
acts *in pari materia*, that the legislature could not have intended
the consequences of a literal construction of its language, and such
construction would lead to great inconvenience, if not to an absur-
dity, the literal construction will not be followed.

ID. — REPEAL OF CODE PROVISIONS — IMPLICATION NOT FAVORED. — Re-
peals by implication are not favored; and a subsequent act will not
repeal prior code provisions by implication, where force and effect
can be given to both.

ID. — ACTION TO CONDEMN LAND FOR FERRY — EVIDENCE — PUBLIC USE
— DETERMINATION OF SUPERVISORS CONCLUSIVE. — In an action to
condemn land for a ferry-landing, under a franchise over a river be-
tween two counties, granted by the board of supervisors of the
proper county, testimony for the defendants, to show that the ferry
was not a public use, is not admissible. The determination by the
board, upon evidence adduced before it, that the ferry was a public
necessity, is conclusive in such action.

ID. — NOTICE OF HEARING OF APPLICATION — AFFIDAVIT OF PUBLICATION
— PRINCIPAL CLERK. — An affidavit of publication of the notice of
hearing of the application for the franchise was properly made by
the principal clerk, who is shown by the affidavit to have charge of
all the advertisements in the paper.

ID. — CONTEST OF APPLICATION — LOCATION OF FERRY — DETERMINATION
OF BOARD — EVIDENCE. — Where it appears that the defendants ap-
peared before the board and contested the application for the ferry
franchise, and had a full hearing after notice given, the questions as
to whether the location of the ferry by the board would best sub-
serve the use of the public and be least injurious to the defendants,
were for the determination of the board upon such hearing, and
evidence thereupon is not admissible for the defendants in an
action to condemn their land for the ferry.

ID. — VENUE OF ACTION — RIGHT OF CONDEMNATION. — The action to
condemn the land was properly brought in the county in which the
land was situated; and the grant of the ferry franchise, properly made

to the plaintiffs by the board of supervisors of the other county as provided by law, gave to them the right to maintain the action.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. E. E. Gaddis, Judge.

The facts are stated in the opinion of the court.

Clark & Gill, and R. Clark, for Appellants.

W. H. Grant, for Respondents.

VAN DYKE, J.—The action is to condemn a strip of land for a ferry-landing, 60 x 145 feet, on the west bank of the Sacramento River, in Yolo County. Judgment went for the plaintiffs, from which and an order denying a motion for a new trial defendants appealed.

1. It is contended on the part of the appellants that the complaint fails to show that the plaintiffs were the owners and holders of a franchise to erect and construct a ferry, and hence fails to state facts sufficient to constitute a cause of action. This claim is based upon the fact that the complaint does not show that the franchise in question was sold to the highest bidder under the act of 1893 entitled "An act providing for the sale of railroad and other franchises in municipalities, and relative to granting of franchises." (Stats. 1893, p. 288.) The act in question, by a literal reading, might perhaps be broad enough to include a franchise like the one in question, but to give a construction to the act so as to include a franchise for a ferry over a river between two counties, would lead to great inconvenience, if not to an absurdity. The franchise in this case was for a ferry on the Sacramento River, between the counties of Yolo and Sutter, and was granted under the provisions of the Political Code on that subject. (Pol. Code, secs. 2843 et seq.) It is provided in the Political Code that in such case the application must be made to the board of supervisors of the county on the left bank of the river descending; that the board must fix the bond to be given by the corporation or person taking tolls, and provide for the annual renewal thereof; fix the amount of license tax to be paid per month, payable annually, and fix the rate of toll, which must not raise annually an income exceeding fifteen per cent on the actual cost of the construction or erection and maintenance of the ferry for

the first year, nor on the fair cash value, together with the repairs and maintenance for any succeeding year; and make all necessary orders and rules relative to the construction and business thereof. The license tax must not exceed ten per cent of tolls annually collected. The board, in fixing the license tax and rate of tolls, must make inquiry into the present actual cash value and cost of all necessary repairs and maintenance, and in all estimates of the fair cash value of the ferry the value of the franchise must not be taken into consideration. The bond to be given must be conditioned that the ferry will be kept in repair, and that the keeper will faithfully comply with the laws of the state and all legal orders made by the board, and pay all damages by reason of any delay at and defect in such ferry. The license tax must be paid to the treasurer of the county granting it, and one half thereof repaid to the treasurer of the county in which the other 'end of the ferry is located. The owner of the land on the left bank of the river descending is entitled to preference over the owner on the right bank, in procuring authority to construct a ferry. The board, in hearing the application, is vested with the authority to determine whether or not the applicant is a suitable person, and among the rules and regulations it may prescribe the number of boats to be kept, their character, and how propelled; the number of hands employed; the number of trips to be made daily, or whether trips shall be made in the night-time; who may be ferried free of tolls; in case of steamboats, rate of speed; and penalty for violation of rules and regulations. It will be readily seen that many of these provisions are entirely inconsistent with the theory that the franchise should be sold to the highest bidder, as provided by the act of 1893. In case the franchise should be sold to the highest bidder, which board of supervisors should sell the same? and would the sale by the board of either county convey any franchise in the other county? and in case each county should sell to different bidders, which one would be entitled to the franchise? Again, a sale to the highest bidder is inconsistent with the provision giving preference to the owner on the left bank of the stream, and the board would have no right to require a bond if the highest bidder is entitled to the franchise. Neither would it exercise its discretion as to whether the applicant was a suitable person. The bidder might have to pay a large sum for the franchise, and the amount so paid could not be considered by the board in

fixing the rate of toll. The whole policy of the law, as shown in the Political Code, is to allow franchises like this to be granted by the board to a suitable person, to subserve a public benefit, subject to rules and regulations, and that the license required to be paid, as fixed by the board, is to be full compensation to the counties, and to be divided between them. It was evidently considered that such a ferry was a public necessity, and should be subject to the control of the local board for the benefit of the public, to be constructed by a private party, to be compensated in tolls. The reason and spirit of the act of 1893 does not apply to a case of this kind, any more than it did apply to a case of a steam-railroad passing through a town or city, as held in *People* v. *Craycroft*, 111 Cal. 544. There it was said that although the language of the act of 1893 was broad enough to cover a steam-railroad, and the privilege of laying and operating a steam-railroad through a city, yet at the same time it was perfectly evident by the whole tenor of the act, and other acts *in pari materia*, that the legislature could not have intended the consequences of a literal construction of the language, the court saying, "This law was not intended to apply to such a case, but only to those cases — as of street-railroads — in which *bona fide* competition is possible." The act of 1893 does not, in terms, purport to amend or repeal the code provisions on the subject of ferries, and repeals by implication are not favored. In order for a subsequent act to repeal a former, it should appear from the later act that it was intended to take the place of or repeal the former, or that the two acts are so inconsistent that force and effect cannot be given to both. (*Capron* v. *Hitchcock*, 98 Cal. 427; *Matter of Yick Wo*, 68 Cal. 304;[1] *Christy* v. *Board of Supervisors of Sacramento County*, 39 Cal. 10.) It seems to have become apparent that a literal construction of the act of 1893 would cover cases not contemplated, and lead to the absurdities pointed out, and therefore said act was superseded by the passage of another act by the legislature in 1897 (Stats. 1897, p. 135), relating to the same subject. This later act, by its terms, is limited to the sale of street-railroads and other franchises in municipalities, and does not apply to counties, nor to steam-railroads and telegraph lines in municipalities.

2. The court did not err in excluding the testimony offered

---

[1] 58 Am. Rep. 12.

by defendants for the purpose of showing that the ferry was not a public use. The defendants appeared and contested that question before the board of supervisors granting the franchise.. Section 2893 of the Political Code provides that, after a hearing, "if the board finds that the ferry is either a public necessity or convenience, and that the applicant is a suitable person, . . . authority to erect and take tolls on the ferry may be granted to him for the term of twenty years." The board in this case heard the evidence, and determined that the purpose of the proposed ferry was a public necessity, and its determination in this proceeding is conclusive. (*Santa Ana* v. *Harlin*, 99 Cal. 540; *County of Siskiyou* v. *Gamlich*, 110 Cal. 98; *Tehama County* v. *Bryan*, 68 Cal. 63; *County of San Mateo* v. *Coburn*, 130 Cal. 631.) The affidavit of the publication of the notice of time and place of hearing the application is claimed to be defective because made by the "principal clerk of the Yolo Democrat." It is said that section 415 of the Code of Civil Procedure requires the affidavit to be made by the "printer, or his foreman or principal clerk." The affidavit in this case substantially complies with the statute. It shows that the party making it had "charge of all the advertisements in said paper." (*Sharp* v. *Daugney*, 33 Cal. 513; *Waters* v. *Waters*, 27 N. Y. Supp. 1006; 7 Misc. Rep. 519.) But the record in this case also shows that the defendants appeared before the board and contested the application on its merits.

3. The action was properly brought in Yolo County, that being the county in which the land sought to be condemned is situated. The board of supervisors of Sutter County granted the franchise as provided by law, and by reason of the franchise the plaintiffs had the right to maintain the action. The court properly excluded the offered testimony of defendants for the purpose of proving that the ferry was not located where it would best subserve the use of the public and be least injurious to defendants. These matters were for the determination of the board of supervisors, and the defendants, after notice given, had a hearing before that tribunal. *Pasadena* v. *Stimson*, 91 Cal. 259, is not in point. That was an action to condemn land for the purpose of a sewer, and the owner of the land sought to be condemned had not had his day in court. There was no provision for preliminary hearing and determination of these questions, as in the case at bar. (*County of Siskiyou* v. *Gam-*

*lich,* 110 Cal. 100.)   This disposes of the main assignment of errors on the part of the appellants, necessary to be considered.

Judgment and order affirmed.

McFarland, J., Harrison, J., and Garoutte, J., concurred.