[Sac. No. 3866. In Bank.—February 28, 1927.]

CORNELIA A. HERSHEY, as Administratrix, et al., Appellants, v. RECLAMATION DISTRICT No. 108 et al., Respondents.

[1] RECLAMATION DISTRICTS—ASSESSMENT FOR RECLAMATION AND IRRIGATION—APPLICATION OF SECTION 3455, POLITICAL CODE.—Section 3455 of the Political Code, as amended in 1917 and 1919 (Stats. 1917, p. 1197, and Stats. 1919, p. 604), is applicable to proceedings taken by the trustees and officers of a reclamation district, which is within the Sacramento and San Joaquin Drainage District, for the levying of an assessment for reclamation and irrigation purposes.

[2] ID.—PLEADINGS—FRAUD.—Fraud is never to be presumed, but it must be affirmatively pleaded and proved, or the facts from which it is to be inferred must be of such character that no other reasonable conclusion may be reached but the single one of evil design on the part of the person or entity whose acts are attempted to be impugned.

[3] ID.—OBJECTION TO ASSESSMENT—SECTION 3462, POLITICAL CODE.— Section 3462 of the Political Code requires an objector to an assessment for reclamation and irrigation to specify the grounds of objection to the assessment, and unless this be done the decision of the board of supervisors becomes final, and the assessment list is conclusive evidence that said assessment has been made and levied according to law.

[4] ID.—PLANS FOR RECLAMATION—APPROVAL BY STATE RECLAMATION BOARD—SECTION 3455, POLITICAL CODE.—Under section 3455 of the Political Code, the action of the state board of reclamation in approving, modifying, or rejecting any original, supplementary or new plan of reclamation, after a hearing as therein provided, is final, and thereafter the sufficiency of such plans cannot be attacked either before the reclamation board or in any court.

[5] ID.—CONSTITUTIONAL LAW.—The provisions of section 3455 of the Political Code deny to the property owners no constitutional right.

[6] ID.—STATUTES—CONSTITUTIONAL OBJECTIONS—WAIVER—ESTOPPEL. The right to question the constitutionality of a statute may be waived; and it is a general rule applicable in civil cases that a constitutional question must be raised at the earliest opportunity or it will be considered as waived. One who receives a benefit from an unconstitutional law is estopped from asserting its unconstitutionality.

[7] ID.—CREATION OF RECLAMATION AND IRRIGATION DISTRICTS—POWER OF LEGISLATURE.—The legislature has the power to create, by special acts, reclamation or irrigation districts; and it has the power to merge or consolidate into a unified system two established systems of bringing arid and swamp and overflowed lands into a state of cultivability and productiveness.

[8] ID.—RECLAMATION DISTRICT No. 108—CREATION AND POWERS OF.— Reclamation District No. 108 exists as a creature of special statutory enactments, and it is given broad powers in addition to the powers conferred by general laws.

[9] ID.—AMENDMENT OF 1917—APPLICATION OF POLITICAL CODE.—All reclamation districts existing in this state at the time of and

---

2.   See 12 Cal. Jur. 816; 12 R..C. L. 424.

3.   See 9 Cal. Jur. 895, 896.

6.   See 5 Cal. Jur. 627; 6 R. C. L. 94.

7.   See 9 Cal. Jur. 851.

prior to the 1917 amendment formed under any statute of the state were subject to the provisions of the Political Code relating to reclamation districts just as though such districts had been formed by or created under the provisions of the code relating to swamps and overflowed, salt marsh, and tide lands.

[10] ID.—SECTION 3455, POLITICAL CODE—TITLE OF ACT AMENDING.— The title of the act amending section 3455 of the Political Code was expressive of the subject of the act if the term "reclamation" can be said to be sufficiently comprehensive to include irrigation.

[11] ID.—RECLAMATION AND IRRIGATION—STATUTORY CONSTRUCTION.— The two methods to reclaim land, to wit, draining overflowed lands and supplying water to dry and arid lands, are germane to a general purpose and in accord with the policy of the government; and the term "reclamation" in a statute is sufficiently broad and comprehensive to include the irrigation of lands which are rendered excessively dry and arid in the summer season by reason of the shutting out of the storm and flood water of winter.

[12] ID.—ASSESSMENTS—INTEREST—APPEAL.—It will be presumed on appeal in the absence of evidence to the contrary, that the officers of a reclamation district in computing interest on past expenses to be included in an assessment, computed it on a basis not exceeding its legal rate; and the trial court having heard the evidence addressed to the issues and having found thereon, its finding will not be interfered with on appeal unless, as a matter of law, it appears to be erroneous.

---

(1) 19 C. J., p. 729, n. 54.   (2) 27 C. J., p. 28, n. 50, p. 44, n. 57, p. 63, n. 88, p. 67, n. 16.   (3) 19 C. J., p. 738, n. 43, 44.   (4) 19 C. J., p. 659, n. 9, 10.   (5) 19 C. J., p. 727, n. 46.   (6) 12 C. J., p. 769, n. 29, 33, p. 785, n. 63.   (7) 19 C. J., p. 606, n. 15, p. 625, n. 93; 36 Cyc., p. 1009, n. 47; 40 Cyc., p. 817, n. 85.   (8) 40 Cyc., p. 817, n. 84.   (9) 19 C. J., p. 607, n. 18.   (10) 36 Cyc., p. 1054, n. 42, p. 1058, n. 65, 66, 67.   (11) 40 Cyc., p. 817, n. 85 New. (12) 4 C. J., p. 731, n. 81, p. 876, n. 78; 19 C. J., p. 627, n. 50, p. 757, n. 40; 40 Cyc., p. 819, n. 5.

APPEAL from a judgment of the Superior Court of Colusa County. George H. Thompson, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Clark, Nichols & Eltse for Appellants.

Thomas Rutledge and Devlin & Devlin for Respondents.

SEAWELL, J.—Ella L. Hershey, one of the original plaintiffs, having died, Cornelia A. Hershey and Davidella Hershey, as administratrices of her estate, have been substituted in her place and stead. This is an attack made by plaintiffs upon assessment No. 5 levied upon land situate within Reclamation District No. 108, located in Yolo and Colusa Counties, the easterly boundary line of which is the Sacramento River. The district comprises approximately 60,000 acres of land. [1] Said Reclamation District being within the Sacramento and San Joaquin drainage district, section 3455 of the Political Code, as amended (Stats. 1917, p. 1197, and Stats. 1919, p. 604), is made applicable to the proceedings taken by the trustees and officers of the district, which proceedings constitute the basis of the assessment sought to be invalidated by this proceeding. Plaintiffs' lands included within the limits of the district consist of approximately 2,500 acres and were assessed for both reclamation and irrigation purposes. The lands were assessed in two parcels, and were designated as tracts number 9 and 10, respectively. Tract number 9 contains 2,377 acres and was assessed in the sum of $163,175.55; number 10 contains approximately 123 acres and was assessed in the sum of $467.25. The two parcels are contiguous. The action was brought against said Reclamation District and its officers and two hundred other owners in the district, numbered from 1 to 200, both inclusive.

The report to the board of supervisors upon which the assessment proceedings are based is dated March 1, 1923, and was filed with the board of supervisors of the county of Colusa on March 31, 1923. It contains the plan of reclamation and the estimates upon which the assessment is asserted. Judgment in the court below went against the plaintiffs and this appeal is from the judgment as entered.

In addition to the formal allegations of the complaint it is alleged that on March 1, 1923, the trustees of said district made an alleged order purporting to adopt certain plans and new, amendatory, supplemental, and additional plans for the reclamation and irrigation of lands within Reclamation District No. 108, together with alleged estimates of the cost of past and contemplated reclamation and irrigation works of the district, including incidental expenses and al-

leged maintenance and repairs thereof, and that said plans and estimates contained statements that the improvements made were necessary to the reclamation and irrigation of the lands of the district. The complaint alleges the filing by the board of trustees of the requisite number of copies of the original plans and estimates with the board of supervisors of the county of Colusa, the certification and transmission of copies thereof to the state reclamation board and the making of a purported order by the latter board approving the same and the subsequent making of a purported order by the board of supervisors of the county of Colusa appointing three commissioners of assessment to levy an assessment and apportion the same according to the benefits that would accrue to each tract of land; the making up of the assessment lists showing the amounts stated in said estimates; the fixing of the time when objections would be heard; the publication of notice thereof and the levying of the final assessments against plaintiffs' lands, which aggregated the sum of $163,642.80. Proceeding, the complaint alleges the filing of written objections to said assessments and the overruling of the same by the board of supervisors of the county of Colusa, which body then and there made an order approving and affirming said assessments. Thereafter the original list was filed with the county treasurer of the county of Colusa and a certified copy was filed with the county treasurer of the county of Yolo. The objections to the assessment alleged to have been filed by plaintiffs with the board of supervisors are set forth in the complaint and constitute practically the balance of the pleading. First, a repudiation of any liability springing from the assessment was made upon the ground that the costs and expenses of the reclamation and irrigation project were not apportioned according to the benefits that had accrued or would accrue, but that said apportionment was, as to plaintiffs' lands, unequal, excessive, and unfair as compared with the assessments imposed upon the lands of others similarly subject to taxation. The assessment is also contested upon the grounds that the commissioners imposed upon plaintiffs' land charges amounting to about $20 per acre for costs and charges theretofore incurred in the construction, operation, and maintenance of irrigation works and incidental expenses incurred in connection with such works and charges for

interest on indebtedness incurred in constructing, maintaining, and operating said works and about $10 additional per acre for the construction of additional irrigation works and the maintenance thereof and for additional expenses to be incurred in connection with future works and the operation and maintenance thereof, which works have not benefited and will not benefit plaintiffs' lands. It was also made a ground of objection that the whole of said expenses incurred or to be incurred were for the benefit of lands other than the lands of plaintiffs and that plaintiffs' lands do not in any sense need irrigation; that the charges imposed upon said lands for irrigation works and irrigation expenses are disproportionate to the benefits that have or will accrue to the same; that said plans and estimates purport to show estimates of amounts expended and to be expended upon (a) the back levee of the district; (b) drainage works, including pumping plants; (c) power plants; (d) irrigation works and an irrigation system and the expenses of the construction, maintenance and incidental expenses thereof; (e) incidental expenses of such works. It is also made a ground of written objection that said estimates were and are excessive and untrue and relate to things and represent and include expenses which were not made for the work of reclamation or the irrigation of the lands of said district, and therefore there was no authority to incur the same. The court found that the foregoing objections pleaded were not filed with the board of supervisors, but others, less elaborate and specific, which are hereafter summarized, were filed. Concluding this subject, the complaint proceeds by alleging that the plans and estimates do not, upon the face of either, show such invalid charges, but they were known to the defendants and unknown to plaintiffs and can only be ascertained by bringing the defendants into court; that said plans and estimates as to certain items of reclamation and irrigation fail to show with any degree of certainty the nature of the work done or where the work, if done, was in fact done; that the commissioners in levying the assessment could not, in the case of the estimates or statements of expenditures relating to certain items [(a) to (e), inclusive], determine from said plans and estimates the nature or purpose of large amounts of expenses that were included in the total estimates for work done or to be done and said commissioners

were compelled to ascertain from the engineer of the district the nature of work done or to be done in order to make said estimates; that said facts were not ascertainable from an inspection of the plans and estimates by the land owners and could only be known by a full and careful accounting and hearing in a court action; that the expenses complained of and charged against plaintiffs' lands are not shown in any plans or estimates showing the nature of the work; that plaintiffs' lands were assessed with large sums on account of interest accrued or thereafter to accrue on expenses incurred. It is claimed that it is impossible to ascertain from the face of the plans and estimates what periods of time are covered by said estimates of expenses on account of interest accrued or to accrue or to determine the amount that should have been included in said assessment as accrued or unaccrued future interest. It is alleged that large amounts of the various sums which go to make up the assessment consist of expenses that were not for maintenance or repair, but were expenses upon new, supplemental, and additional plans of reclamation and irrigation that were never adopted or made the plans of the district prior to the time said expenses were incurred; that large expenses were charged on plaintiffs' lands without being segregated or separately stated in said plans, and are mixed and confused with expenditures laid out on plans and estimates previously adopted, and that a large portion of the expenses contained in said estimates were incurred without the prior making, adopting, approving, or filing of any plans and estimates for said contemplated expenditures. This, it is alleged, applied particularly to the Knight's Landing power plant built and equipped at a cost of about $200,000, which was never of any benefit or use to plaintiffs' lands and which has since been discontinued. In general language objection is made to every item of reclamation and irrigation included in the estimated costs of construction, estimated maintenance costs, estimated drainage operation costs, estimated irrigation costs and incidental expenses and all charges for maintenance or repair of such work. Large sums of money are alleged to have been expended and heavy expenses incurred on new, supplemental, and additional plans without the prior adoption, filing, or approving of the same and said plans and estimates contain no showing as to when warrants were is-

sued or the purpose thereof or as to the times of incurring said expenses. It is complained that the incidental expenses mentioned in the reports and estimates are grossly excessive and those claimed to have been incurred were not described and, it is charged, the estimate was made in a lump sum for the purpose of concealing expenditures of moneys made in a manner not authorized by law. It is alleged that the plans and estimates were adopted by the trustees of the district pursuant to a purpose and plan to compel the commissioners of assessment to relieve the lands of the River Farms Company, a corporation, and others of heavy burdens that had been imposed upon their lands by reason of the adoption of plans of reclamation and irrigation that had proven unwise and had failed and which far exceeded in cost the estimate of the district engineer; that pursuant to said plan of favoritism said River Farms Company's lands were relieved of a large amount of said expense which was superimposed upon plaintiffs' lands; that one of the trustees who voted to adopt the plans was president or manager of and a stockholder in said River Farms Company. Finally it is alleged that neither the board of trustees of said district, nor the state reclamation board, nor the board of supervisors of the county of Colusa had jurisdiction to make any order or orders of any kind with respect to the plans and estimates referred to in said complaint and said commissioners of assessment were without jurisdiction to make any assessment upon said lands of plaintiffs.

The prayer is that the court shall make and enter its decree setting aside, canceling, and annulling and holding to be invalid the assessment so made. The foregoing is a full and fair *résumé* of the material allegations of the complaint.

By their answer defendants aver the adoption by the board of trustees of said district, on or about May 1, 1923, of plans for the reclamation and irrigation of land in Reclamation District No. 108, together with estimates of the cost of the work to be done, and already done, including maintenance and repair thereof. They aver that said plans and costs were necessary in the reclamation and irrigation of said lands. The approval of the plans and estimates by the reclamation board of the state of California and the acceptance of the same, the order of the board of supervisors

approving the assessment and the taking of the necessary steps in all stages of the proceedings required to give validity to the assessment are pleaded. They deny that prior to the date of the hearing of the objections to said assessment the objections were made as alleged by plaintiffs, and allege that many objections set forth in the complaint were not contained in the written objections. Defendants aver that the commissioners in assessing plaintiffs' land apportioned the cost of reclamation works, including irrigation works, in proportion to the benefits accrued or that would accrue upon each tract of land, and that the assessment levied upon plaintiffs' lands was not excessive or unequal as compared with other lands. They aver that no amount or sum was imposed upon plaintiffs' lands for or as charges theretofore incurred in the construction or operation or maintenance of irrigation works, or incidental expenses in connection therewith, or for interest on indebtedness incurred in constructing, maintaining, or operating such works, or any sum for the construction of additional irrigation works or the maintenance thereof or for incidental expenses to be incurred in connection with the future operation or maintenance of the same. It is averred that plaintiffs need irrigation and will be benefited by the works set forth in the plans. It is alleged that the plans and estimates were taken by the commissioners as an entirety and that the assessment was assessed against each tract of land in proper proportion to the benefits that have accrued or will accrue to the same, and that said assessment against each tract of plaintiffs' lands was made in one entire sum. They deny that any invalid charges were included in said assessment and aver that said plans and estimates set forth with certainty the work done, its nature, and the cost and expenses of each piece of work, and that said commissioners and all other persons could determine from said plans and estimates all things and matters of whatsoever kind necessary to the making of the assessments and which were included therein. They deny that the commissioners were compelled to or did rely upon the engineer for the information as to the nature of the work to be done, and deny that plaintiffs' lands were assessed with any sum on account of interest then accrued or to accrue on any expenses which had theretofore accrued. Uncertainty as to the period of time covered by interest

charges, the rate charged, accrued, or to accrue is denied. It is averred that no estimate was made on plans or works of reclamation or irrigation which were adopted before the expenses were incurred and that all the work done as set forth in the plans and estimates was necessary and was done in accordance with the requirements of the same and was for the benefit of plaintiffs' lands. Favoritism shown or extended to the River Farms Company, or any land owner whatsoever, or unwise or improper action or conduct on the part of the district or its officers is likewise denied. As a second defense the order of the state reclamation board made April 24, 1923, approving the plans and estimates of said Reclamation District No. 108, and which has not since been vacated, annulled or modified, is pleaded. For a third defense the order of the board of supervisors of the county of Colusa made December 6, 1923, approving the assessment attacked by the complaint is set up as an estoppel against all objections not specifically made by the plaintiffs in their written objections filed with said board of supervisors.

The trial court made elaborate findings upholding the validity of the assessment. The proceedings, beginning with the plans adopted by the board of trustees of the district March 2, 1923, are set forth in chronological order. The written objections to the assessment of plaintiffs, as actually made, are set out in their numerical order. The first five objections challenge the jurisdiction of the board of supervisors, trustees of the district, and commissioners of assessment, respectively, to make the preliminary orders and perform the acts and duties necessary to lay the foundation of a valid assessment. No. 6 attacks the plans and estimates on the ground that they do not represent a fair or reasonable scheme of reclamation and were so devised as to prevent a fair apportionment of costs and expenses in proportion to benefits accruing to each tract of land. No. 7 protests against an attempt to impose upon plaintiffs' lands charges for an irrigation system, and complaint is made that no system had been devised for the irrigation of their lands and said lands had not been irrigated, and, further, the assessment was an effort to charge their lands and the lands of others with an expense due to the mistakes of those who originated the irrigation works and canal system. No. 8 rests upon the assertion that the plans are insufficient and

do not adequately describe the work done or proposed to be done. The same objection is made as to the estimates of expenses. Objection is also made that the assessment contains large amounts imposed upon plaintiffs' lands for work done under plans that were never adopted or approved, and that neither the plans for reclamation or irrigation have been adequately adopted or sanctioned. Objection No. 9 insists that the assessment was not made or spread in proportion to the entire amount raised by the levy, and was unfairly and inequitably levied, and plaintiffs' assessment is, therefore, greater than their proportionate share should be. No. 10 avers that the value of plaintiffs' land will not be enhanced in proportion to the amount of the assessment; that the alleged improvements have not improved said lands; that the tracts of land on behalf of which the scheme of irrigation was proposed and originated and which are benefited thereby should be charged with the costs and expenses of irrigation construction and maintenance and the "lands which never desired irrigation and the owners of which never sought irrigation" should not be loaded with the vast unforeseen expenses since sought to be avoided or lessened by the original projectors of the scheme, by bringing in plaintiffs and others as burden bearers.

The court found that the proceedings leading up to and including the levy and assessment were regular and legal; that said lands were assessed in proportion to the benefits to be derived from the expenditures of money set forth in said plans as the estimated cost of the work; that the commissioners did not impose any separate sum or charge whatever upon plaintiffs' lands or any part thereof for charges theretofore incurred in the construction or operation or maintenance of irrigation works or incidental expenses or interest on indebtedness incurred in the construction, maintenance, or operation of such works, or for the construction of additional irrigation works or for the maintenance or incidental expenses thereof in connection with future works. As to the estimates for interest, the following is taken from said plans and estimates as incorporated in the findings:

"Estimates of Costs.

"In the following tabulation is given the total estimated cost of all works included in these plans of Reclamation District No. 108 to be completed or acquired after July 27,

1917. This total estimated cost as shown for each item includes interest estimated on the outstanding expenditures for such item and the expenditures to be hereafter made in connection with such item up to the date of the estimated time that will be required to levy, equalize and collect upon the assessment to be hereafter made in accordance with these plans and estimates, the District having no funds available for the payment of the outstanding warrants or warrants to be hereafter issued until collection can be made on said assessment to be hereafter made.''

It is found that no amount was included in said plans and estimates of said assessment for expenses which were not for maintenance or repair; that each expense was segregated or separately stated as required by law; that each piece of work referred to in the complaint was done for the benefit of said district and the lands therein, including plaintiffs', and the assessment was in all respects and as to all lands within the district fairly and lawfully made and levied. The court, in short, found against plaintiffs and in favor of defendants upon every material issue made by the pleadings.

[2] The complaint makes no charge of felonious misappropriation or embezzlement of the funds of the district and the allegations of improper application of the funds of the district, if, indeed, they may be regarded as sounding in fraud, rest upon doubtful implications flowing from the general language of the pleading rather than upon direct and positive allegations. Fraud is never to be presumed, but it must be affirmatively pleaded and proved, or the facts from which it is to be inferred must be of such character that no other reasonable conclusion may be reached but the single one of evil design on the part of the person or entity whose acts are attempted to be impugned. We conclude from the pleadings that it is not the claim of the plaintiffs that the moneys which came into the hands of the officers of the district were feloniously misappropriated by them or were not applied to the payment of reclamation and irrigation works and the maintenance and repair of the project and on account of interest, but that certain of the expenditures made were not authorized by law. Favoritism is alleged to have been shown to the River Farms Company, but no satisfactory evidence was adduced at the trial to sustain the allegation and the court found against plaintiffs on that

200 Cal.—36

issue. The written objections actually filed by plaintiffs with the board of supervisors are not specific, but are set forth in the most general terms.

[3] Plaintiffs at no time, either by the complaint herein or the written objections filed with the board of supervisors, requested a modification or amendment of the assessment in any particular or a reapportionment of the entire assessment as by section 3462 of the Political Code provided, or for general relief. A direct attack is made upon the validity of the assessment in its entirety by reason of the acts, omissions, and failures of the district and its officers to comply with the statutory procedure in such cases provided and for want of jurisdiction on the grounds set forth in the written objections. Said written objections filed with the board of supervisors as prescribed by section 3462 of the Political Code, being ten in number, and which constitute the foundation of the action, assumed to state the specific grounds of objection, but not one of them questioned the validity or sufficiency of section 3455 of the Political Code, but each objection was placed on jurisdictional grounds because of alleged infirmities therein pointed out. "Jurisdiction" is a comprehensive term. A court or judicial body may lack jurisdiction to render a judgment, order, or decree, although the act under which the proceedings are prosecuted is invulnerable to attack on strictly constitutional grounds. Section 3462, *supra,* requires the objector to specify the grounds of objection to the assessment, and unless this be done the decision of the board of supervisors becomes final and the assessment list is conclusive evidence that said assessment has been made and levied according to law. "No objection to such assessment shall be considered by the board of supervisors, or allowed in any other action or proceeding, unless such objection shall have been made in writing to the board of supervisors as above specified." (Pol. Code, sec. 3462.) "As above specified" relates to the clause which prescribes the grounds of the objections to be stated in writing. The purpose of this provision obviously is to save the assessment from subsequent attack upon some ground which would compel a court to invalidate the entire assessment, thereby entailing a heavy loss or waste which could have been avoided had the attention of the board of supervisors been timely called to the

error, omission or defect. Had the objection been made on the ground that section 3455, *supra*, as amended in 1917, was invalid for any reason and the objectors were relying upon such invalidity as a ground of attack that would be urged against any assessment that might be levied under it, it may be that the irrigation project would have been abandoned or postponed to such time as the question of its validity should have been determined, thereby avoiding a heavy loss which must be sustained by someone or deferred to such time as the legislature should, by re-enactment, cure such defects as are now urged against the plan of improvement by reason of the defective title of the act or any objection that might be made upon the due process clauses of the state or federal constitutions. [4] Again, it is provided by subdivision 4, section 3455, *supra*, that after the board of supervisors has approved the plans a hearing must be held by the state reclamation board to consider such objections as may be offered with respect to said plans and it shall thereafter approve, modify, amend, or reject the same. Subdivision 5 of said section further provides that when the state reclamation board shall have taken action approving, modifying, or rejecting any original, supplementary, or new plan of reclamation, after a hearing as therein provided, "such action shall be final and thereafter the sufficiency of said plans shall not be subject to attack either before the reclamation board or in any court. . . . " No appearance was made or objection filed or taken by any of the plaintiffs against the proposed plan of reclamation, including irrigation. [5] The foregoing provisions deny to the property owners no constitutional right. They are served with notice to appear and state in writing their objections, and defaulting therein they are concluded by statutes of repose. *O'Dea* v. *Mitchell*, 144 Cal. 374 [77 Pac. 1020], involved the failure of parties in a street assessment case to avail themselves of the remedy provided by the statute by filing written objections as to the extent or area of the district within the time required by statute, and it was held to constitute a waiver of all objections. The question of the invasion of a constitutional right was disposed of as follows:

"Appellants contend that the assessment here involved is in conflict with the fourteenth amendment to the Constitution of the United States, because lots which should have been

assessed were not included in the district, and therefore excessive and unjust burdens were placed upon the lots which were assessed—thus violating the principle of equality; but for the reasons above stated, if for no other, this contention cannot be maintained; appellants having failed to invoke the remedy provided by the statute, are now in no position to assert rights, if any they have, which could have been secured by that remedy.''

[6] The right to question the constitutionality of a statute may be waived. "It is a general rule applicable in civil cases that a constitutional question must be raised at the earliest opportunity or it will be considered as waived.'' (12 C. J. 785.) ''And where parties have failed to invoke a remedy provided by statute they are in no position thereafter to assert rights which could have been secured by that remedy, by endeavoring to invoke the aid of the Constitution.'' (5 Cal. Jur. 627.) One who receives a benefit from an unconstitutional law is estopped from asserting its unconstitutionality. (*Vickery* v. *Board of Commrs., etc.*, 134 Ind. 554 [32 N. E. 880].) As to the necessity of pointing out specifically the grounds of protest against inclusion of lands in a drainage district or being thereafter estopped from objecting on jurisdictional grounds not set forth in the protest, see *Mackay et al.* v. *Hancock County*, 137 Iowa, 88 [114 N. W. 552].

[7] It cannot be doubted in view of the well-settled law upon the subject that the legislature has the power to create, by special acts, reclamation or irrigation districts. It could have established Reclamation District No. 108 as a separate irrigation district, notwithstanding its organization as a reclamation district, in which case the district area would have had a dual existence. That the legislature holds the power to merge or consolidate into a unified system two established systems of bringing arid and swamp and overflowed lands into a state of cultivability and productiveness there can exist no reasonable doubt. The effort of the legislature in adopting the amendment here questioned was to effect such a result.

Section 3455 of the Political Code, amended in 1917, under which amended act Reclamation District No. 108 asserts authority to exercise the powers and functions of an irrigation district, provides:

"3455.  (a) Within Sacramento and San Joaquin drainage district.  If, and when any such district is located, in whole or in part, within the Sacramento and San Joaquin drainage district; (1) The board of trustees of such reclamation district must report to the board of supervisors of the county within which the district, or the greater part thereof, is situate, by filing, with the county clerk of said county, three copies of the original plan or plans of the works of reclamation and three copies of every new, supplemental, or additional plan, if any, together with the estimates of the cost of the contemplated works of the district, including incidental expenses, maintenance and repair necessary for the reclamation of the lands of the district in pursuance of any such plan or plans.  The term 'works of reclamation' as used in this chapter shall include not only such public works and equipment, as are necessary for the unwatering of lands in reclamation districts, but shall also include such like works as may be necessary to water or irrigate the same lands in such districts."

The portion of the subdivision above quoted provides that "the term 'works of reclamation' as used in this chapter shall include not only such public works and equipment, as are necessary for the *unwatering* of lands in reclamation districts, but shall also include such like works as may be necessary *to water or irrigate* the same lands in such districts."  (Italics supplied.)

The act consolidating and reorganizing Reclamation District No. 729 with Reclamation District No. 108 and fixing and establishing the boundaries of the consolidated district to be known as Reclamation District No. 108 went into effect in August, 1913.  Its management and control was made subject to the provisions of the Political Code of the state and to other laws of the state relative to reclamation districts.  (Stats. 1913, p. 62.)  An act approving, confirming, and declaring valid the creation, formation, and organization of said consolidation was adopted in 1915.  (Stats. 1915, p. 559.)  The act amending section 3455 of the Political Code to its present form and amending a number of other sections of the Political Code "relating to swamp and overflowed, salt marsh and tide lands" by reference to the numbers of the sections amended went into effect July 17, 1917.  (Stats. 1917, p. 1197.)  An amendment of a code sec-

tion may be made by reference to the number of the section to be amended. (*Estate of Elliott,* 165 Cal. 339 [132 Pac. 439].) The same legislature passed an approval and confirmation act of the district as defined in 1915, which provided that in the control and management of the affairs of the district it is subject to the provisions of the Political Code and to all laws of the state, except as therein provided, in connection with the issuance and payment of warrants and payment of assessments and conferred jurisdiction upon the board of supervisors of Colusa County as to all matters concerning said district and provided also for the management, control, and administration of the affairs of said district. (Stats. 1917, p. 1219.) By an act approved in 1919 it was again provided that the management and control of the affairs of the district are subject to the provisions of the Political Code and to all other laws of the state, except as provided in said act, in the issuance and payment of warrants and payment of assessments; also provided for the deposit of moneys of the district with the treasurer of Colusa County and conferring jurisdiction upon the board of supervisors of the county of Colusa as to all matters concerning said district; providing for the management, control, and administration of the affairs of the district and ratifying the incorporation of certain lands in said district; authorizing the trustees to make equitable settlements with the owners of land so incorporated as to the cost of any work theretofore done before the act became effective; declaring Reclamation District No. 108 to be the successor in interest of Reclamation District No. 108 as defined and approved by the several acts of 1913, 1915, and 1917. By an act of the legislature of 1921 another section was added to the Political Code. The title of said act is expressive of the subject and follows:

"An act to add to the Political Code a new section, to be numbered three thousand four hundred sixty-seven, relating to the power of trustees of reclamation districts to make rules and regulations for furnishing water for the irrigation of lands in the district, fixing charges and rates for the same, collection of the same, levying assessments for the same on the lands in the district, providing for a special fund kept by the county treasurer in which sums collected for irrigation shall be kept, and providing for the paying out said

fund on orders or warrants by the trustees for the costs of irrigation.'' (Stats. 1921, p. 1590.)

[8] From the foregoing reference to statutes it will be seen that Reclamation District No. 108 exists as a creature of special statutory enactments, and it is given broad powers thereunder in addition to the powers conferred by general laws. Large sums of money for irrigation construction were expended, beginning with July, 1917, before the act of 1919 was adopted. [9] All reclamation districts existing in the state at the time of and prior to the 1917 amendment formed under any statute of the state were subject to the provisions of the Political Code relating to reclamation districts just as though such districts had been formed by or created under the provisions of the code relating to "swamp and over-flowed, salt marsh and tide lands." [10] The title of the act amending section 3455, in addition to making specific reference to the number of the code section, incorporates as a part of its title the language last above placed within quotation points. We think the title was expressive of the subject of the act if the term "reclamation" can be said to be sufficiently comprehensive to include irrigation. Certainly every land owner within District No. 108 and every person interested in reclamation in the state was, by the title of the act, put upon notice that the reclamation laws of the state were the subject of amendment by the state legislature. Owners of land within the district subject to reclamation could not have read the title of the proposed act without understanding that a change was to be made in the law. Upon reading the act the proposed change becomes manifest. And this is so whether the term "reclamation" should be deemed not ordinarily sufficiently broad as to include "irrigation." What we mean to say is that the nature, purpose, and scope of the amendment of 1917 could not have escaped the attention of the owners of reclamation lands which were to be made subject to irrigation. There is authority holding that an irrigation district possesses independent powers necessary to drain its overflowed lands and to protect its land owners from seepage and overflow waters as well as to supply water to the dry and arid lands of the district. (*Pioneer Irr. Dist.* v. *Stone,* 23 Idaho, 344 [130 Pac. 382]; *Nampa etc. Irr. Dist.* v. *Petrie,* 28 Idaho, 227 [153 Pac. 425]; *United States* v. *Ide,* 277 Fed. 373.)

[11]  The conclusion reached in the above cited cases must rest upon the theory that the two methods employed to reclaim land are germane to a general purpose and in accord with the policy of the government. If the conclusion in the above cited cases be correct, there appears to be no reason why the converse of the situation is not true and that it may with equal soundness of reason be argued that the more ancient method adopted by the individual or the state for the enlargement of cultivable areas, to wit, "reclamation," is sufficiently broad and comprehensive to include the irrigation of lands which are rendered excessively dry and arid in the summer seasons by reason of the shutting out of the storm and flood waters of winter. Reclamation includes irrigation in its general, ordinary sense and, as a matter of fact, the term is quite generally applied to the reclaiming of arid lands as well as the shutting out of overflow waters. The primary purpose in each case is to regulate or control waters to the extent that lands may be brought into a state suitable for cultivation. Reclamation and irrigation of lands are cognate subjects and in many instances one would be futile and useless without the other. The same principle of law which sanctions the construction of drainage works as a necessary adjunct to an irrigation system is at least persuasive here in addition to other features of the case which have received consideration.

On July 27, 1917, said reclamation district was reorganized and the area was increased by adding 3,180 acres, making a total of 57,280 acres. The plans as prepared and adopted include an irrigation system. The estimated cost of said works was $1,231,255 and as summarized consisted of a back levee, without maintenance; irrigation, without maintenance; drainage and irrigation, and drainage laterals, without maintenance; incidental expenditures of the district; total estimated cost, without maintenance; maintenance of back levee; maintenance and operation of irrigation system. The estimated cost and expense of each item was set out. In 1919 the district was again reorganized and enlarged so as to include an additional 700 acres of land. The plans were unaffected by reorganization. On August 19, 1920, a report of the engineer covering "amended, new, supplemental and additional plans of reclamation and estimates of cost" was adopted by the trustees as the plea of the district. This

plan provided primarily for modification of the irrigation
project as included in the report of 1917. It also contained
revised estimates of costs of all necessary reclamation works.
The estimated costs were segregated into seven groups or
branches of improvement, to wit, back levee, drainage works,
irrigation works, bridges and culverts, power plants, rights
of way, and incidental expenses. The estimated cost of
construction, maintenance, and operation was set opposite
each group. The total estimated cost was $1,951,644.87. On
September 21, 1921, the board of trustees rescinded the plan
adopted in 1917 and the plan adopted in 1921 and adopted
an "amendatory and additional plan of reclamation" which
included an enlarged irrigation project and new estimates of
cost. It contains the same items of expense as the plan of
1920, but with a material increase in the estimates of cost,
the total being $3,137,336.54. The report, plans, and esti-
mates which are assailed by the plaintiffs and are known as
"new, supplemental and amendatory plans" were filed
March 3, 1923. Said report and plans and estimates make
a comprehensive recital of all the proceedings taken by the
district since its reorganization in 1917 and set forth the
history of the district from a much earlier date.

The summary of the totals as computed and estimated
by the trustees and officers in the estimates of 1923 is
as follows: For construction, $2,338,490.75; maintenance,
$438,929.43; drainage operation, $185,802.98; irrigation
operation, $100,583.66; incidentals, $343,993.87; total,
$3,407,800.69.

Necessarily the subjects dealt with had to be grouped or
classified to some extent, keeping in mind a substantial com-
pliance with the statute, if the reports, plans, and estimates
were to be held within reasonable limits. It could not be
expected that each item considered in forming the estimates
would be set out in minute detail.

[12] Plaintiffs complain bitterly of the lack of itemiza-
tion of certain interest bearing periods with respect to dates
and the rate of interest charged. In this respect it is con-
tended that if interest on past expenses is claimed the basis
for the charge should be stated in the plans and estimates;
if future interest on past expense is a legitimate charge, then
the amount and rate of interest should be stated in the plans
and estimates so that the land owner may know whether

the charge is fair. The amount of the future interest on past expense is not stated and if interest on past expense is a permissible item there is no way of segregating it from unstated future interest. In short, it is claimed that the plans and estimates are poorly prepared and leave the question of interest in a state of utter confusion. On the question of charges of interest, as well as all other charges or expenses or things or matters about which appellants were entitled to be informed, the officers of the district were called as witnesses and examined thereon. The questions whether or not the items upon which interest was computed are set out in commendable detail and whether or not specific sums of interest were included as items of charges could have been gone into fully at the hearing had before the board of supervisors and again at the trial. As a matter of fact the commissioners, who are engineers, were examined as to thé interest expenditures and charges and it was not made to appear to the trial court that a want of segregation or itemization in the particulars raised by the objections was inexplicable to a fatal degree, or was a mystifying method employed by the officers of the district to perpetrate wrongs upon certain of the land owners of the district. The officers gave their theory as to what they believed to be the fairest plan of arriving at estimates, which were, after all, except in cases where interest has accrued, or where the situation presents some fixed basis of computation, but an approximation.

It may be presumed in the absence of evidence to the contrary that the officers did their duty and computed interest on a basis not exceeding its legal rate. But this was a matter easily ascertainable. The trial court having heard the evidence addressed to the issues before it and having made its finding thereon, we are not permitted to interfere with its judgment unless as a matter of law it appears to be erroneous. This does not so appear. We have also given consideration to other objections made on the ground that there was not a proper segregation of expenditures on account of cost of construction and maintenance and other matters of expense. It was the purpose and effort of the commissioners to classify under general headings cost, maintenance, and operation expenses. As a rule they were not segregated or itemized in the manner pointed out by plaintiffs. But as

we observed above, the trial court found no sufficient reason because of such failure to invalidate the assessment. The plans and estimates are complicated and brought into the calculations a large number of problems difficult of solution. Many of the problems which confronted the commissioners were not capable of exact results even by the application of the rules of the most exact of sciences, mathematics. We think the work of the commissoners, however, is the result of at least a reasonable, fair, and intelligent consideration of a difficult problem. The question of benefits conferred was passed upon and fixed by the commissioners and finally by the trial court. The contention that the main canal is about nine miles from the nearest point of plaintiffs' lands is not determinative of the question of benefits. The land is within the district and it has a right to the use of the waters which are brought into the district from the Sacramento River. The benefits that are thereby derived, as compared to other lands within the district, were questions of fact to be determined by the district in the first instance and by the trial court finally. As an abstract proposition lands located more distantly from a watercourse may be benefited in a greater degree than lands which are adjacent to the stream. So with respect to lands of high elevation compared with low lands. The Wilkins Slough pumping plant constructed at a considerable cost and rendered useless by reason of the fall of the water-level to a point below the intake of the canal was a contingency, it would seem, that could not ordinarily be foreseen. Large quantities of water taken from the river for irrigation purposes and excessive dry seasons were responsible for its failure. The Knight's Landing, Howell Point, Rough and Ready, and Steiner Bend pumping and drainage losses were questions submitted to the court upon the theory of their invalidating effect as to plaintiffs' entire assessment. The sound judgment of the court, even though we may question certain of the expenditures and transactions, cannot, under the rule of decision, be disturbed. A comprehensive plan or scheme of reclamation involving many problems, such as we have before us, must fail or disappoint in some respects and in the absence of proof of bad faith upon the part of its officers, courts will not exact such a rigid stewardship of those charged with a public duty as to com-

pletely ignore the complexities and uncertainties that attend the problem.

We are of the opinion, in view of the procedure taken by the district and the legislative treatment of the subject matter, that the supplemental plans and estimates which succeeded the 1917 reorganizing act and the subsequent acts heretofore mentioned give warrant for including the costs and expenses incurred after the passage of the 1917 act and prior to the adoption of the 1923 plans and estimates.

The rulings of the court on the admissibility of evidence in the two instances complained of are not sufficient to justify a reversal in view of the record contents.

Judgment affirmed.

Richards, J., Langdon, J., Shenk, J., Curtis, J., Preston, J., and Waste, C. J., concurred.