10 Cal.2d 359 (1937)
COUNTY OF CONTRA COSTA (a Political Subdivision), Plaintiff and Appellant,
v.
AMERICAN TOLL BRIDGE COMPANY (a Corporation), Defendant and Appellant.
S. F. No. 15342. 
Supreme Court of California. In Bank. 
December 11, 1937.
 Dunn, White & Aiken for Defendant and Appellant.
 Francis P. Healey, District Attorney, for Plaintiff and Appellant.
 SHENK, J.
 This is an action to recover two per cent of the gross tolls collected by the defendant from the operation of the Carquinez bridge from the date of its opening on May 22, 1927, to July 28, 1932. Judgment was entered for the plaintiff in the sum of $86,769. The defendant has appealed from the whole of the judgment and the plaintiff has filed a notice of appeal from a portion thereof. *361
 By ordinance, effective March 19, 1923, the board of supervisors of Contra Costa County granted a franchise to the Rodeo-Vallejo Ferry Company, the predecessor of the defendant, to construct a bridge across the Straits of Carquinez and to maintain the same for twenty-five years from and after the effective date of the ordinance.
 At the point where the bridge is constructed the Straits of Carquinez form the boundary line between the counties of Contra Costa and Solano. The application of the Rodeo-Vallejo Ferry Company, filed September 27, 1922, was appropriately addressed to the board of supervisors of Contra Costa County, being the county on the left bank descending the Sacramento River. (Sec. 2843, Pol. Code.) Thereafter proceedings were regularly had and taken before that board under the provisions of the Political Code (secs. 2843 et seq.), relating to the granting of authority to construct and maintain toll bridges. The franchise ordinance contains the following provision: "That the license tax to be paid by the Rodeo-Vallejo Ferry Company, a corporation, its successors and assigns, for taking tolls on said bridge shall be One Hundred (100) Dollars per month, payable annually, commencing from the date of the operation of the bridge. That two (2%) per cent of the gross receipts derived from the use and operation of said bridge shall also and in addition be paid to the county of Contra Costa for the benefit of the counties of Contra Costa and Solano for the use of said franchise."
 The license tax of $100 per month has been paid as required by the ordinance, but the additional payment of two per cent of the gross tolls has not been paid. Notwithstanding its definite agreement to meet this charge the toll bridge company resists its enforcement on the ground that such requirement was beyond the power of the board of supervisors of Contra Costa County to include in the franchise as one of the obligations of the franchise holder.
 [1] The position of the defendant is that if the two per cent revenue be considered as a license tax it is invalid for the reason that subdivision 2 of section 2845 of the Political Code placed a limitation of $100 per month on any license tax to be required of the holder of a toll bridge franchise; and since the defendant's franchise specifically provides for a license tax of $100 per month the power of the board of supervisors to impose such a charge was thereby exhausted. *362 But the two per cent revenue is neither a license tax nor an ad valorem tax. When authorized to be collected it is in much the same category as the two per cent payments required in franchises granted under the Broughton Act (Stats. 1905, p. 777), which payments were held in County of Tulare v. City of Dinuba, 188 Cal. 664 [206 P. 983], to be neither a tax nor a license and not subject to the "in lieu" provisions of section 14 of article XIII of the Constitution later adopted, but were in the nature of compensation for the privilege granted.
 [2] The defendant nevertheless insists that nowhere in the law is there any authority in the board of supervisors to exact compensation for the granting of a franchise to construct and maintain a toll bridge across a body of water which forms the boundary line between two counties, and that since specific authority to that end is absent the challenged provision of the franchise ordinance in question is void.
 The question of the powers of the board of supervisors in granting such a franchise was involved in Galvin v. Board of Supervisors, 195 Cal. 686, wherein this court said at pages 693 and 694 [235 P. 450]: "The powers of the board of supervisors with relation to the grant of franchises of this character are set forth in part 3, title 6, chapter 4, of the Political Code, and in the sections thereof between 2843 and 2881, inclusive, and also in subdivision 35 of section 4041 of said Code." References to the same effect are found in Newsom v. Board of Supervisors, 205 Cal. 262 [270 P. 676].
 At the time the defendant's franchise was granted, in March, 1923, the general powers of boards of supervisors were defined in section 4041 of the Political Code. It was there provided: "Boards of Supervisors, in their respective counties shall have jurisdiction and power, under such limitations and restrictions as are provided by law ... 35. To grant licenses and franchises for the construction, keeping and taking of tolls on roads, bridges, ferries, wharves, streets, booms and piers, and to grant franchises along and over the public roads and highways for all lawful purposes, upon such terms and conditions and restrictions as in their judgment may be necessary and proper, and in such manner as to present the least possible obstruction and inconvenience to the traveling public." *363
 It is the contention of the plaintiff that the foregoing language of the code section which we have italicized was sufficient authority to enable the board of supervisors to insert in the franchise the two per cent requirement, and that there are no legal limitations or restrictions on the authority thus granted. We fail to discover in the law any limitation or restriction on the power of the board to insert such requirement. Moreover, even in the absence of specific statutory authority, it has been held that the public body making the grant can prescribe terms and conditions in the granting and for the acceptance of a franchise. (City and County of Denver v. Stenger, 295 Fed. 809; 26 Cor. Jur. 1030.) One of these conditions may be the requirement of payment of money the amount of which may be fixed without regard to the cost of supervision or inspection. (19 R. C. L. 1153.) And when so required this condition becomes a part of the contract which the grantee has voluntarily assumed. (St. Louis v. Western Union Telegraph Co., 148 U.S. 92 [13 S.Ct. 485, 37 L.Ed. 380]; 12 R. C. L. 193.) We are unable to draw the distinction urged by the defendant between a franchise to use a public street or highway for the purpose of revenue and a franchise to use a bridge which has public highway approaches and which from the time of its dedication to public travel became a public highway. (See Sears v. Tuolumne County, 132 Cal. 167 [64 P. 270].) In each case the grantee is enjoying a sovereign prerogative not otherwise exercisable.
 The defendant, however, invokes the familiar rule of strict construction as applied to powers granted to subordinate governmental agencies, and great reliance is placed on the case of Gardella v. County of Amador, 164 Cal. 555 [129 P. 993]. That case is cited as holding in effect that the general powers of the board of supervisors, as outlined in subdivision 35 of section 4041 of the Political Code above referred to, have no application to the granting of franchises to construct and maintain toll bridges across waters separating two counties. It is true that in that case it was held that subdivision 33 of said section 4041 had no application to such bridges. But that subdivision did not purport to deal with the subject of the granting of franchises to take tolls on bridges. That subject was then covered by subdivision 32. (Stats. 1909, p. 131.) Subdivision 33 was limited to the granting of licenses and franchises to take tolls on "public *364 roads or highways". The holding in the Gardella case is not questioned, but it is not controlling on the question of the proper construction to be placed on subdivision 35 as it stood in 1923.
 Another case strongly relied upon by the defendant is Pool v. Simmons, 134 Cal. 621 [66 P. 872, 873]. That case involved the question of whether a franchise to operate a ferry on the Sacramento River between the counties of Yolo and Sutter granted under sections 2843 et seq. of the Political Code, should have been awarded to the highest bidder in accordance with the provisions of "An act providing for the sale of railroad and other franchises in municipalities, and relative to granting franchises." (Stats. 1893, p. 288.) It was held that the act of 1893 had no application to the granting of a ferry franchise and in the course of the opinion it was stated: "The whole policy of the law, as shown in the Political Code, is to allow franchises like this to be granted by the board to a suitable person, to subserve a public benefit, subject to rules and regulations, and that the license required to be paid, as fixed by the board, is to be full compensation to the counties, and to be divided between them."
 The foregoing language cannot be taken as an adjudication that the exaction of compensation for the use of such a franchise, in addition to the license tax, could not properly be authorized by a law of the state. The declaration is no more than a statement of the policy of the law as shown by the particular sections (2843 et seq.) of the Political Code then under consideration. The court did not assume to define the general powers of the board of supervisors under section 4041 of the Political Code. What was said concerning the policy of the law was not necessary to the disposition of the case and is not controlling when the precise point, as here made, is presented for decision.
 [3] In addition to the efficacy of the code sections in authorizing the board of supervisors to impose the condition of additional compensation, or, as in this case, to agree with the grantee that such additional compensation be paid, we take notice of an amendment to section 2872 of the Political Code in 1923, approved May 8th of that year. (Stats. 1923, p. 272.) That amendment added the following significant provision to the statute: "All licenses and franchises granted subsequent to the fourteenth day of March, A. D. one thousand eight hundred eighty one for the construction of any *365 such bridges across the Sacramento or San Joaquin Rivers, the Suisun Bay, or Carquinez Straits, the Petaluma, Napa or Sonoma Creeks, whether above or below the head of navigation of said waters or streams, are hereby ratified, approved, confirmed and made valid for all purposes; ..."
 It must be taken for granted that it is and has been, since the enactment of any legislation on the subject, within the power of the legislature to authorize the board of supervisors to require the payment of two per cent of the tolls annually collected by the holder of the franchise. It is also true as a general rule that whatever the legislature could have authorized the board of supervisors to do in the first instance it could thereafter ratify and confirm. (Cole v. City of Los Angeles, 180 Cal. 617 [182 P. 436]; Los Angeles City Water Co. v. City of Los Angeles, 88 Fed. 720; 18 Cal.Jur., p. 796.)
 The defendant points out that the ratifying act of 1923 refers to specifically named navigable waters of this state and contends that as thus framed it is a special and local act prohibited by subdivision 33 of section 25 of article IV of the Constitution. It is argued that since the legislature could not have authorized by special act the board of supervisors to grant a franchise to construct the Carquinez bridge, it could not thereafter ratify the franchise by special act, citing Stange v. City of Dubuque, 62 Iowa, 303 [17 N.W. 518]. The act is claimed to be special because it operates only upon persons holding franchises granted between 1881 and 1923 for toll bridges over the enumerated waters, and to be local because it does not apply throughout the state, but only to the places designated.
 The first acts of the legislature on the subject prohibited the construction of toll bridges over navigable waters. (Stats. 1854, p. 123; Stats. 1855, p. 182.) In 1863 boards of supervisors in their several counties were vested with control of toll bridges across streams that were not navigable. (Stats. 1863, p. 720.) In 1869 the legislature for the first time authorized the construction of bridges over navigable waters, but, with the specific prohibition against the licensing of "bridges across the Sacramento or San Joaquin Rivers, the Petaluma, Napa or Sonoma creeks, or San Francisco, San Pablo or Suisun bays". (Stats. 1869-70, p. 887.) From the time of its enactment in 1872 until its amendment in 1923, section 2872 of the Political Code contained the following proviso: "provided, that the board of supervisors *366 shall not have power to license bridges across the Sacramento or San Joaquin rivers, the Suisun bay, or Carquinez straits, the Petaluma, Napa or Sonoma creeks, except at points above the head of navigation on said streams".
 This proviso was declared to be repealed by implication by the act of March 14, 1881 (Stats. 1881, p. 76), which authorized boards of supervisors to do generally what was specifically prohibited by the proviso of 1872. (Chico Bridge Co. v. Sacramento Transp. Co., 123 Cal. 178 [55 P. 780].) It is contended by the plaintiff that the ratifying act of 1923 may be said to have encompassed every franchise to construct a bridge over the navigable streams and bodies of water mentioned in the proviso of 1872 which could have been granted lawfully prior to 1923, and therefore that the amendment of 1923 was uniform in its operation.
 It is readily observed that whenever the legislature has directed its attention to the subject of toll bridges across navigable waters it has dealt with it by specifically mentioning the principal navigable streams and bodies of water in this state. [4] Without further consideration it may not be said with certainty that in dealing with such an important local problem as the proper construction, maintenance and operation of a toll bridge across Carquinez Straits the legislature could not have done so by special act. The fact that the franchise in question was granted under the general act makes the question more difficult. However, it is deemed unnecessary to determine the question at this time for the reason that power in the board of supervisors under the general act appears to have been sufficiently clear to justify the judgment of the trial court on that ground.
 [5] Certain it is that the legislature by its enactment in 1923 sought to do everything that could have been done by an act more general in terms, in order that the defendant's franchise might be secure and its securities free from attack. It is asserted by counsel for the plaintiff and is not denied that the ratifying statute was passed at the instance and for the benefit of the holder of the franchise. This defendant as holder is not, for obvious reasons, taking the position that the board of supervisors was wholly lacking in power to grant the franchise in the first instance. Having obtained the advantages that have flowed from the grant the holder may not now with good grace, if at all, effectively resist the performance of an obligation thereunder which it voluntarily *367 and lawfully agreed to undertake. (See Hershey v. Reclamation Dist. No. 108, 200 Cal. 550, 564 [254 P. 542]; Gregory v. Hecke, 73 Cal.App. 268, 284 [238 P. 787]; 12 Cor. Jur., p. 773.)
 The plaintiff's appeal from a portion of the judgment is not pressed. No briefs have been filed in support thereof. We are therefore not called upon to pass upon its merits. In its briefs as respondent the plaintiff has requested an affirmance of the judgment in toto. The order about to be made will dispose of both appeals.
 The judgment is affirmed.
 Waste, C.J., Curtis, J., Langdon, J., Houser, J., and Seawell, J., concurred.
 EDMONDS, J.,
 Concurring.
 I concur in the judgment upon the ground that the toll bridge company, having accepted the benefits of the franchise granted by the ordinance of Contra Costa County and still continuing to do so, is estopped from challenging its provisions. The company cannot claim both under and against the enactment by which the franchise was created and now exists. It is a contract between the corporation and the county. "One cannot in the same proceeding both assail a statute and rely upon it," (Hurley v. Commissioner of Fisheries, 257 U.S. 223 [42 S.Ct. 83, 66 L.Ed. 206]); nor can he claim under a franchise and at the same time repudiate some of its provisions. (Crittenden County v. McConnell, 237 Ky. 806 [36 S.W. (2d) 627].) The appellant acquired from the original grantee of the franchise the rights which it enjoys and cannot now question the validity of the challenged requirement. (State v. Portland General Elec. Co., 52 Or. 502 [95 P. 722, 98 P. 160].)